**Larry L. ANDERSON, d/b/a Larry L. Anderson, Architect, Plaintiff-Appellant,**

v.

**M. E. (Panama) SHIFLETT, Defendant-Appellee.**

**No. 241–70.**

United States Court of Appeals, Tenth Circuit.

Jan. 4, 1971.

Larry D. Patton, Oklahoma City, Okl. (Howard Davis and Paul F. Fernald, of Kerr, Davis, Irvine, Burbage & Foster, Oklahoma City, Okl., on the brief), for plaintiff-appellant.

Walter D. Hanson, Oklahoma City, Okl. (Raymond E. Tompkins and Georg A. Fisher, of Hanson, Fisher, Peterson & Tompkins, Oklahoma City, Okl., on the brief), for defendant-appellee.

Before PICKETT, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The question presented is whether the federal district court acquired jurisdiction over the person of the defendant under the Oklahoma long arm statutes. The district court quashed the service of summons and dismissed the action.

Plaintiff-appellant Anderson, a citizen of Oklahoma, brought this diversity action on a 1967 contract for the performance of services by him as an architect. Defendant-appellee Shiflett is a citizen of Texas. The contract was made in

Texas and covers projects located in Texas. The plaintiff says that he completed through the "Design Development Phase" of one project and the "Schematic Design Phase" of another, that all of the work with regard thereto was done in his Oklahoma City office, and that the defendant has abandoned the projects and refused payment of money due. The contract provided that it "shall be governed by the law of the principal place of business of the Architect."

The defendant was served personally by a deputy United States Marshal in Texas. In support of his motion to quash and dismiss, defendant submitted an affidavit in which he affirms his Texas citizenship and residence and says that:

"He has not been in the Western District of Oklahoma since sometime in 1964; that he has never been in Plaintiff's office in Oklahoma City; and did not meet with him at any place in Oklahoma relative to the matter involved in this Civil Action."

Defendant urges that, in a contract action between private parties with jurisdiction dependent solely on diversity, extraterritorial service is not permitted by any federal statute or by the Federal Rules of Civil Procedure. Plaintiff relies on Rule 4(d) (7), F.R. Civ.P., which authorizes service "in the manner prescribed by the law of the state in which the district court is held." Defendant cites Smith v. Alexandrian, N.D.Ill., 30 F.R.D. 553, and says that Rule 4(d) relates to how service may be made and Rule 4(f) determines where service may be made and forbids extraterritorial service. The Alexandrian case was decided before the 1963 amendments to Rule 4 and was repudiated in Metropolitan Sanitary District of Greater Chicago v. General Electric Company, N.D.Ill., 35 F.R.D. 131. Whatever confusion may exist because of the wording of Rule 4(d) (7) and Rule 4(e) and (f) relating to extraterritorial service, we believe that the clear intent is to permit such service when provided by state law. See 4 Fed.Pract. & Pro., § 1113, p. 466, and 2 Moore's Federal Practice ¶ 4.41–1[2], p. 1291.24 and ¶ 4.41–1[3], p. 1291.56.

Section 187(a) (1), 12 O.S. (1969 Supp.) authorizes extraterritorial service when the cause of action arises from the "transaction of any business within the "State"; and § 1701.03(a) (1), 12 O.S. (1969 Supp.) empowers a court to exercise personal jurisdiction over a claim for relief against a person when that claim arises from the person's "transacting any business in this state."

Plaintiff depends confidently on Mc-Gee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, where the court applied the California long arm statute to uphold a personal judgment against an insurance company. McGee is one of the progeny of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which established the standard of "minimum contacts" with assurance of "fair play and substantial justice," ibid. at 316, 66 S.Ct. at 158, as determinative of the amenability of a foreign corporation to suit. We reviewed those cases in Curtis Publishing Company v. Cassel, 302 F.2d 132, 135–136, and said that "leaving every case to its own facts, to constitute doing business a nonresident corporation's activities must be substantial, continuous, and regular as distinguished from casual, single, or isolated." See also Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 682–684, cert. denied 339 U.S. 947–948, 70 S.Ct. 802, 94 L.Ed. 1362.

The Oklahoma Supreme Court considered the problem in Crescent Corporation v. Martin, Okl., 443 P.2d 111, 115, and said that the "question of application of the long-arm statute * * * depends on the totality of the contacts with Oklahoma." The court held that an employment contract for consulting services with a corporation not licensed or doing business in Oklahoma was not the transaction of business within the contemplation of § 187 of the Oklahoma statutes.

Plaintiff puts much emphasis on the decision in Electro-Craft Corporation v. Maxwell Electronics Corporation, 8 Cir., 417 F.2d 365, which applied the International Shoe Company minimum contact standard in upholding Minnesota jurisdiction in a case by a Minnesota corporate buyer against a Texas corporate seller. The court pointed out that although the contract was made in Texas "contractual consequences were reasonably anticipated in Minnesota." Ibid. at 369.

In the case at bar we are not concerned with corporate responsibility but rather with the performance of a contract made by two private individuals for the performance of architectural services. The reference in McGee to the trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents," supra, 355 U.S. at 222, 78 S.Ct. at 201, may indicate that there is no difference between corporate and noncorporate activity. Be that as it may, the Supreme Court said in Hanson v. Denckla, 357 U. S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed. 2d 1283, that:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

We have here a single, isolated transaction in the form of a contract for personal service. The totality of the contacts with Oklahoma was the performance of certain phases of the work at the plaintiff's Oklahoma City office. Nothing in the record discloses the reasonable anticipation of contractual consequences in Oklahoma. To support jurisdiction, the plaintiff relies on his own unilateral activities. Under the decision in Hanson v. Denckla this is not enough. To become subject to Oklahoma jurisdiction, the defendant must purposefully avail himself of the privilege of doing business in that state and thereby invoke the benefits and protections of its laws. The record before us does not satisfy this requirement. Instead, it shows no more than the unilateral performance of contracted personal service in the forum. The idea that such performance alone can subject the employer to the jurisdiction of the forum has frightening consequences.

Affirmed.