KULKO *v.* SUPERIOR COURT OF CALIFORNIA IN AND
FOR THE CITY AND COUNTY OF SAN FRANCISCO
(HORN, REAL PARTY IN INTEREST)

No. 77–293.   Argued March 29, 1978—Decided May 15, 1978

Marshall, J., delivered the opinion of the Court, in which Burger, C. J., and Stewart, Blackmun, Rehnquist, and Stevens, JJ., joined. Brennan, J., filed a dissenting opinion, in which White and Powell, JJ., joined, *post*, p. 101.

*Lawrence H. Stotter* argued the cause for appellant. With him on the brief was *Edward Schaeffer*.

*Suzie S. Thorn* argued the cause for appellee. With her on the brief was *James E. Sutherland*.

Mr. Justice Marshall delivered the opinion of the Court.

The issue before us is whether, in this action for child support, the California state courts may exercise *in personam* jurisdiction over a nonresident, nondomiciliary parent of minor children domiciled within the State. For reasons set forth below, we hold that the exercise of such jurisdiction would violate the Due Process Clause of the Fourteenth Amendment.

## I

Appellant Ezra Kulko married appellee Sharon Kulko Horn in 1959, during appellant's three-day stopover in California en route from a military base in Texas to a tour of duty in Korea. At the time of this marriage, both parties were domiciled in and residents of New York State. Immediately fol-

lowing the marriage, Sharon Kulko returned to New York, as did appellant after his tour of duty. Their first child, Darwin, was born to the Kulkos in New York in 1961, and a year later their second child, Ilsa, was born, also in New York. The Kulkos and their two children resided together as a family in New York City continuously until March 1972, when the Kulkos separated.

Following the separation, Sharon Kulko moved to San Francisco, Cal. A written separation agreement was drawn up in New York; in September 1972, Sharon Kulko flew to New York City in order to sign this agreement. The agreement provided, *inter alia,* that the children would remain with their father during the school year but would spend their Christmas, Easter, and summer vacations with their mother. While Sharon Kulko waived any claim for her own support or maintenance, Ezra Kulko agreed to pay his wife $3,000 per year in child support for the periods when the children were in her care, custody, and control. Immediately after execution of the separation agreement, Sharon Kulko flew to Haiti and procured a divorce there;[1] the divorce decree incorporated the terms of the agreement. She then returned to California, where she remarried and took the name Horn.

The children resided with appellant during the school year and with their mother on vacations, as provided by the separation agreement, until December 1973. At this time, just before Ilsa was to leave New York to spend Christmas vacation with her mother, she told her father that she wanted to remain in California after her vacation. Appellant bought his daughter a one-way plane ticket, and Ilsa left, taking her

---

[1] While the Jurisdictional Statement, at 5, asserts that "the parties" flew to Haiti, appellant's affidavit submitted in the Superior Court stated that Sharon Kulko flew to Haiti with a power of attorney signed by appellant. App. 28. The Haitian decree states that Sharon Kulko appeared "in person" and that appellant filed a "Power of Attorney and submission to jurisdiction." *Id.,* at 14.

clothing with her. Ilsa then commenced living in California with her mother during the school year and spending vacations with her father. In January 1976, appellant's other child, Darwin, called his mother from New York and advised her that he wanted to live with her in California. Unbeknownst to appellant, appellee Horn sent a plane ticket to her son, which he used to fly to California where he took up residence with his mother and sister.

Less than one month after Darwin's arrival in California, appellee Horn commenced this action against appellant in the California Superior Court. She sought to establish the Haitian divorce decree as a California judgment; to modify the judgment so as to award her full custody of the children; and to increase appellant's child-support obligations.[2] Appellant appeared specially and moved to quash service of the summons on the ground that he was not a resident of California and lacked sufficient "minimum contacts" with the State under *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316 (1945), to warrant the State's assertion of personal jurisdiction over him.

The trial court summarily denied the motion to quash, and appellant sought review in the California Court of Appeal by petition for a writ of mandate. Appellant did not contest the court's jurisdiction for purposes of the custody determination, but, with respect to the claim for increased support, he renewed his argument that the California courts lacked personal jurisdiction over him. The appellate court affirmed the denial of appellant's motion to quash, reasoning that, by consenting to his children's living in California, appellant had "caused

---

[2] Appellee Horn's complaint also sought an order restraining appellant from removing his children from the State. The trial court immediately granted appellee temporary custody of the children and restrained both her and appellant from removing the children from the State of California. See 19 Cal. 3d 514, 520, 564 P. 2d 353, 355 (1977). The record does not reflect whether appellant is still enjoined from removing his children from the State.

an effect in th[e] state" warranting the exercise of jurisdiction over him.   133 Cal. Rptr. 627, 628 (1976).

The California Supreme Court granted appellant's petition for review, and in a 4-2 decision sustained the rulings of the lower state courts.   19 Cal. 3d 514, 564 P. 2d 353 (1977).   It noted first that the California Code of Civil Procedure demonstrated an intent that the courts of California utilize all bases of *in personam* jurisdiction "not inconsistent with the Constitution." [3]   Agreeing with the court below, the Supreme Court stated that, where a nonresident defendant has caused an effect in the State by an act or omission outside the State, personal jurisdiction over the defendant in causes arising from that effect may be exercised whenever "reasonable."   *Id.,* at 521, 564 P. 2d, at 356.   It went on to hold that such an exercise was "reasonable" in this case because appellant had "purposely availed himself of the benefits and protections of the laws of California" by sending Ilsa to live with her mother in California.   *Id.,* at 521–522, 524, 564 P. 2d, at 356, 358. While noting that appellant had not, "with respect to his other child, Darwin, caused an effect in [California]"—since it was appellee Horn who had arranged for Darwin to fly to California in January 1976—the court concluded that it was "fair and reasonable for defendant to be subject to personal jurisdiction for the support of both children, where he has committed acts with respect to one child which confers [*sic*] personal jurisdiction and has consented to the permanent residence of the other child in California."   *Id.,* at 525, 564 P. 2d, at 358–359.

In the view of the two dissenting justices, permitting a minor child to move to California could not be regarded as a

---

[3] Section 410.10, Cal. Civ. Proc. Code Ann. (West 1973), provides:

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

The opinion below does not appear to distinguish between the requirements of the Federal and State Constitutions.   See 19 Cal. 3d, at 521–522, 564 P. 2d, at 356.

purposeful act by which appellant had invoked the benefits and protection of state law. Since appellant had been in the State of California on only two brief occasions many years before on military stopovers, and lacked any other contact with the State, the dissenting opinion argued that appellant could not reasonably be subjected to the *in personam* jurisdiction of the California state courts. *Id.,* at 526–529, 564 P. 2d, at 359–360.

On Ezra Kulko's appeal to this Court, probable jurisdiction was postponed. 434 U. S. 983 (1977). We have concluded that jurisdiction by appeal does not lie,[4] but, treating the papers as a petition for a writ of certiorari, we hereby grant the petition and reverse the judgment below.[5]

---

[4] As was true in both *Hanson v. Denckla,* 357 U. S. 235 (1958), and *May v. Anderson,* 345 U. S. 528 (1953), this case was improperly brought to this Court as an appeal, since no state statute was "drawn in question . . . on the ground of its being repugnant to the Constitution, treaties or laws of the United States," 28 U. S. C. § 1257 (2). The jurisdictional statute construed by the California Supreme Court provides that the State's jurisdiction is as broad as the Constitution permits. See n. 3, *supra.* Appellant did not argue below that this statute was unconstitutional, but instead argued that the Due Process Clause of the Fourteenth Amendment precluded the exercise of *in personam* jurisdiction over him. The opinion below does not purport to determine the constitutionality of the California jurisdictional statute. Rather, the question decided was whether the Constitution itself would permit the assertion of jurisdiction.

Appellant requested that, in the event that appellate jurisdiction under 28 U. S. C. § 1257 (2) was found lacking, the papers be acted upon as a petition for certiorari pursuant to 28 U. S. C. § 2103. We follow the practice of both *Hanson* and *May* in deeming the papers to be a petition for a writ of certiorari. As in *Hanson* and *May,* moreover, we shall continue to refer to the parties herein as appellant and appellee to minimize confusion. See 357 U. S., at 244; 345 U. S., at 530.

[5] After the California Supreme Court's decision, appellant sought a continuance of trial-court proceedings pending this Court's disposition of his appeal. Appellant's request for a continuance was denied by the trial court, and subsequently that court determined that appellant was in

## II

The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. See *Shaffer* v. *Heitner,* 433 U. S. 186, 198–200 (1977). It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Pennoyer* v. *Neff,* 95 U. S. 714, 732–733 (1878); *International Shoe Co.* v. *Washington,* 326 U. S., at 316. The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought, *Mullane* v. *Central Hanover Trust Co.,* 339 U. S. 306, 313–314 (1950), and a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum. *Milliken* v. *Meyer,* 311 U. S. 457, 463–464 (1940). In this case, appellant does not dispute the adequacy of the notice that he received, but contends that his connection with the State of California is too attenuated, under the standards implicit in the Due Process Clause of the Constitution, to justify imposing upon him the burden and inconvenience of defense in California.

---

arrears on his child-support payments. App. to Brief for Appellant ii–iii. In light of the change in custody arrangements, the court also ordered that appellant's child-support obligations be increased substantially. *Ibid.*

Appellee Horn argues that appellant's request for a continuance amounted to a general appearance and a waiver of jurisdictional objections, and that accordingly there is no longer a live controversy as to the jurisdictional issue before us. Appellee's argument concerning the jurisdictional effect of a motion for a continuance, however, does not find support in the California statutes, rules, or cases that she cites. Moreover, the state trial court expressly determined, subsequent to the request for a continuance, that appellant had "made a special appearance only to contest the jurisdiction of the Court." *Id.,* at i. Under these circumstances, appellant's challenge to the state court's *in personam* jurisdiction is not moot.

The parties are in agreement that the constitutional standard for determining whether the State may enter a binding judgment against appellant here is that set forth in this Court's opinion in *International Shoe Co.* v. *Washington, supra:* that a defendant "have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U. S., at 316, quoting *Milliken* v. *Meyer, supra,* at 463. While the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered, see *McGee* v. *International Life Ins. Co.,* 355 U. S. 220, 223 (1957), an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State. *International Shoe Co.* v. *Washington, supra,* at 316–317, 319. Accord, *Shaffer* v. *Heitner, supra,* at 207–212; *Perkins* v. *Benguet Mining Co.,* 342 U. S. 437, 445 (1952).

Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson* v. *Denckla,* 357 U. S. 235, 246 (1958). We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." *Estin* v. *Estin,* 334 U. S. 541, 545 (1948). But we believe that the California Supreme Court's application of the minimum-contacts test in this case represents an unwarranted extension of *International Shoe* and would, if sustained, sanction a result that is neither fair, just, nor reasonable.

A

In reaching its result, the California Supreme Court did not rely on appellant's glancing presence in the State some 13

years before the events that led to this controversy, nor could it have. Appellant has been in California on only two occasions, once in 1959 for a three-day military stopover on his way to Korea, see *supra,* at 86–87, and again in 1960 for a 24-hour stopover on his return from Korean service. To hold such temporary visits to a State a basis for the assertion of *in personam* jurisdiction over unrelated actions arising in the future would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment. Nor did the California court rely on the fact that appellant was actually married in California on one of his two brief visits. We agree that where two New York domiciliaries, for reasons of convenience, marry in the State of California and thereafter spend their entire married life in New York, the fact of their California marriage by itself cannot support a California court's exercise of jurisdiction over a spouse who remains a New York resident in an action relating to child support.

Finally, in holding that personal jurisdiction existed, the court below carefully disclaimed reliance on the fact that appellant had agreed at the time of separation to allow his children to live with their mother three months a year and that he had sent them to California each year pursuant to this agreement. As was noted below, 19 Cal. 3d, at 523–524, 564 P. 2d, at 357, to find personal jurisdiction in a State on this basis, merely because the mother was residing there, would discourage parents from entering into reasonable visitation agreements. Moreover, it could arbitrarily subject one parent to suit in any State of the Union where the other parent chose to spend time while having custody of their offspring pursuant to a separation agreement.[6] As we have emphasized:

"The unilateral activity of those who claim some rela-

---

[6] Although the separation agreement stated that appellee Horn resided in California and provided that child-support payments would be mailed to her California address, it also specifically contemplated that appellee might move to a different State. The agreement directed appellant to mail the

tionship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State . . . ." *Hanson* v. *Denckla, supra,* at 253.

The "purposeful act" that the California Supreme Court believed did warrant the exercise of personal jurisdiction over appellant in California was his "actively and fully consent[ing] to Ilsa living in California for the school year . . . and . . . sen[ding] her to California for that purpose." 19 Cal. 3d, at 524, 564 P. 2d, at 358. We cannot accept the proposition that appellant's acquiescence in Ilsa's desire to live with her mother conferred jurisdiction over appellant in the California courts in this action. A father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have "purposefully availed himself" of the "benefits and protections" of California's laws. See *Shaffer* v. *Heitner,* 433 U. S., at 216.[7]

Nor can we agree with the assertion of the court below that the exercise of *in personam* jurisdiction here was warranted by the financial benefit appellant derived from his daughter's presence in California for nine months of the year. 19 Cal. 3d, at 524–525, 564 P. 2d, at 358. This argument rests on the premise that, while appellant's liability for support payments

support payments to appellee's San Francisco address or "any other address which the Wife may designate from time to time in writing." App. 10.

[7] The court below stated that the presence in California of appellant's daughter gave appellant the benefit of California's "police and fire protection, its school system, its hospital services, its recreational facilities, its libraries and museums . . . ." 19 Cal. 3d, at 522, 564 P. 2d, at 356. But, in the circumstances presented here, these services provided by the State were essentially benefits to the child, not the father, and in any event were not benefits that appellant purposefully sought for himself.

remained unchanged, his yearly expenses for supporting the child in New York decreased. But this circumstance, even if true, does not support California's assertion of jurisdiction here. Any diminution in appellant's household costs resulted, not from the child's presence in California, but rather from her absence from appellant's home. Moreover, an action by appellee Horn to increase support payments could now be brought, and could have been brought when Ilsa first moved to California, in the State of New York; [8] a New York court would clearly have personal jurisdiction over appellant and, if a judgment were entered by a New York court increasing appellant's child-support obligations, it could properly be enforced against him in both New York and California. [9] Any ultimate financial advantage to appellant thus results not from the child's presence in California, but from appellee's failure earlier to seek an increase in payments under the separation agreement. [10] The argument below to the contrary, in our

[8] Under the separation agreement, appellant is bound to "indemnify and hold [his] Wife harmless from any and all attorney fees, costs and expenses which she may incur by reason of the default of [appellant] in the performance of any of the obligations required to be performed by him pursuant to the terms and conditions of this agreement." App. 11. To the extent that appellee Horn seeks arrearages, see n. 5, *supra*, her litigation expenses, presumably including any additional costs incurred by her as a result of having to prosecute the action in New York, would thus be borne by appellant.

[9] A final judgment entered by a New York court having jurisdiction over the defendant's person and over the subject matter of the lawsuit would be entitled to full faith and credit in any State. See *New York ex rel. Halvey* v. *Halvey*, 330 U. S. 610, 614 (1947). See also *Sosna* v. *Iowa*, 419 U. S. 393, 407 (1975).

[10] It may well be that, as a matter of state law, appellee Horn could still obtain through New York proceedings additional payments from appellant for Ilsa's support from January 1974, when a *de facto* modification of the custody provisions of the separation agreement took place, until the present. See H. Clark, Domestic Relations § 15.2, p. 500 (1968); cf. *In re Santa Clara County* v. *Hughes*, 43 Misc. 2d 559, 251 N. Y. S. 2d 579 (1964).

view, confuses the question of appellant's liability with that of the proper forum in which to determine that liability.

## B

In light of our conclusion that appellant did not purposefully derive benefit from any activities relating to the State of California, it is apparent that the California Supreme Court's reliance on appellant's having caused an "effect" in California was misplaced. See *supra,* at 89. This "effects" test is derived from the American Law Institute's Restatement (Second) of Conflict of Laws § 37 (1971), which provides:

> "A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." [11]

While this provision is not binding on this Court, it does not in any event support the decision below. As is apparent from the examples accompanying § 37 in the Restatement, this section was intended to reach wrongful activity outside of the State causing injury within the State, see, *e. g.,* Comment *a,* p. 157 (shooting bullet from one State into another), or commercial activity affecting state residents, *ibid.* Even in such situations, moreover, the Restatement recognizes that there might be circumstances that would render "unreasonable" the assertion of jurisdiction over the nonresident defendant.

The circumstances in this case clearly render "unreasonable" California's assertion of personal jurisdiction. There is no claim that appellant has visited physical injury on either

---

[11] Section 37 of the Restatement has effectively been incorporated into California law. See Judicial Council Comment (9) to Cal. Civ. Proc. Code Ann. § 410.10 (West 1973).

property or persons within the State of California. Cf. *Hess* v. *Pawloski,* 274 U. S. 352 (1927). The cause of action herein asserted arises, not from the defendant's commercial transactions in interstate commerce, but rather from his personal, domestic relations. It thus cannot be said that appellant has sought a commercial benefit from solicitation of business from a resident of California that could reasonably render him liable to suit in state court; appellant's activities cannot fairly be analogized to an insurer's sending an insurance contract and premium notices into the State to an insured resident of the State. Cf. *McGee* v. *International Life Insurance Co.,* 355 U. S. 220 (1957). Furthermore, the controversy between the parties arises from a separation that occurred in the State of New York; appellee Horn seeks modification of a contract that was negotiated in New York and that she flew to New York to sign. As in *Hanson* v. *Denckla,* 357 U. S., at 252, the instant action involves an agreement that was entered into with virtually no connection with the forum State. See also n. 6, *supra.*

Finally, basic considerations of fairness point decisively in favor of appellant's State of domicile as the proper forum for adjudication of this case, whatever the merits of appellee's underlying claim. It is appellant who has remained in the State of the marital domicile, whereas it is appellee who has moved across the continent. Cf. *May* v. *Anderson,* 345 U. S. 528, 534–535, n. 8 (1953). Appellant has at all times resided in New York State, and, until the separation and appellee's move to California, his entire family resided there as well. As noted above, appellant did no more than acquiesce in the stated preference of one of his children to live with her mother in California. This single act is surely not one that a reasonable parent would expect to result in the substantial financial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have

anticipated being "haled before a [California] court," *Shaffer* v. *Heitner,* 433 U. S., at 216.[12]  To make jurisdiction in a case such as this turn on whether appellant bought his daughter her ticket or instead unsuccessfully sought to prevent her departure would impose an unreasonable burden on family relations, and one wholly unjustified by the "quality and nature" of appellant's activities in or relating to the State of California. *International Shoe Co.* v. *Washington,* 326 U. S., at 319.

### III

In seeking to justify the burden that would be imposed on appellant were the exercise of *in personam* jurisdiction in California sustained, appellee argues that California has substantial interests in protecting the welfare of its minor residents and in promoting to the fullest extent possible a healthy and supportive family environment in which the children of the State are to be raised.  These interests are unquestionably important.  But while the presence of the children and one parent in California arguably might favor application of California law in a lawsuit in New York, the fact that California may be the " 'center of gravity' " for choice-of-law purposes does not mean that California has personal jurisdiction over the defendant. *Hanson* v. *Denckla, supra,* at 254.  And California has not attempted to assert any particularized interest in trying such cases in its courts by, *e. g.,* enacting a special jurisdictional statute.  Cf. *McGee* v. *International Life Ins. Co., supra,* at 221, 224.

California's legitimate interest in ensuring the support of children resident in California without unduly disrupting the children's lives, moreover, is already being served by the State's participation in the Revised Uniform Reciprocal Enforcement of Support Act of 1968.  This statute provides a mechanism

---

[12] See also Developments in the Law—State-Court Jurisdiction, 73 Harv. L. Rev. 909, 911 (1960).

for communication between court systems in different States, in order to facilitate the procurement and enforcement of child-support decrees where the dependent children reside in a State that cannot obtain personal jurisdiction over the defendant. California's version of the Act essentially permits a California resident claiming support from a nonresident to file a petition in California and have its merits adjudicated in the State of the alleged obligor's residence, without either party's having to leave his or her own State. Cal. Civ. Proc. Code Ann. § 1650 *et seq.* (West 1972 and Supp. 1978).[13] New York State is a signatory to a similar Act.[14] Thus, not only may

---

[13] In addition to California, 24 other States are signatories to this Act. 9 U. L. A. 473 (Supp. 1978). Under the Act, an "obligee" may file a petition in a court of his or her State (the "initiating court") to obtain support. 9 U. L. A. §§ 11, 14 (1973). If the court "finds that the [petition] sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property," it may send a copy of the petition to the "responding state." § 14. This has the effect of requesting the responding State "to obtain jurisdiction over the obligor." § 18 (b). If jurisdiction is obtained, then a hearing is set in a court in the responding State at which the obligor may, if he chooses, contest the claim. The claim may be litigated in that court, with deposition testimony submitted through the initiating court by the initiating spouse or other party. § 20. If the responding state court finds that the obligor owes a duty of support pursuant to the laws of the State where he or she was present during the time when support was sought, § 7, judgment for the petitioner is entered. § 24. If the money is collected from the spouse in the responding State, it is then sent to the court in the initiating State for distribution to the initiating party. § 28.

[14] While not a signatory to the Uniform Reciprocal Enforcement of Support Act of 1968, New York is a party to the Uniform Reciprocal Enforcement of Support Act of 1950, as amended. N. Y. Dom. Rel. Law § 30 *et seq.* (McKinney 1977) (Uniform Support of Dependents Law). By 1957 this Act, or its substantial equivalent, had been enacted in all States, organized Territories, and the District of Columbia. 9 U. L. A. 885 (1973). The "two-state" procedure in the 1950 Act for obtaining and

plaintiff-appellee here vindicate her claimed right to additional child support from her former husband in a New York court, see *supra*, at 95, but also the Uniform Acts will facilitate both her prosecution of a claim for additional support and collection of any support payments found to be owed by appellant.[15]

It cannot be disputed that California has substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children. But these interests simply do not make California a "fair forum," *Shaffer* v. *Heitner, supra,* at 215, in which to require appellant, who derives no personal or commercial benefit from his child's presence in California and who lacks any other

---

enforcing support obligations owed by a spouse in one State to a spouse in another is similar to that provided in the 1968 Act. See n. 13, *supra.* See generally Note, 48 Cornell L. Q. 541 (1963).

In *Landes* v. *Landes,* 1 N. Y. 2d 358, 135 N. E. 2d 562, appeal dismissed, 352 U. S. 948 (1956), the court upheld a support decree entered against a divorced husband living in New York, on a petition filed by his former wife in California pursuant to the Uniform Act. No prior support agreement or decree existed between the parties; the California spouse sought support from the New York husband for the couple's minor child, who was residing with her mother in California. The New York Court of Appeals concluded that the procedures followed—filing of a petition in California, followed by its certification to New York's Family Court, the obtaining of jurisdiction over the husband, a hearing in New York on the merits of the petition, and entry of an award—were proper under the laws of both States and were constitutional. The constitutionality of these procedures has also been upheld in other jurisdictions. See, *e. g., Watson* v. *Dreadin,* 309 A. 2d 493 (DC 1973), cert. denied, 415 U. S. 959 (1974); *State ex rel. Terry* v. *Terry,* 80 N. M. 185, 453 P. 2d 206 (1969); *Harmon* v. *Harmon,* 184 Cal. App. 2d 245, 7 Cal. Rptr. 279 (1960), appeal dismissed and cert. denied, 366 U. S. 270 (1961).

[15] Thus, it cannot here be concluded, as it was in *McGee* v. *International Life Insurance Co.,* 355 U. S. 220, 223–224 (1957), with respect to actions on insurance contracts, that resident plaintiffs would be at a "severe disadvantage" if *in personam* jurisdiction over out-of-state defendants were sometimes unavailable.

relevant contact with the State, either to defend a child-support suit or to suffer liability by default.

### IV

We therefore believe that the state courts in the instant case failed to heed our admonition that "the flexible standard of *International Shoe*" does not "heral[d] the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson* v. *Denckla,* 357 U. S., at 251. In *McGee* v. *International Life Ins. Co.,* we commented on the extension of *in personam* jurisdiction under evolving standards of due process, explaining that this trend was in large part "attributable to the . . . increasing nationalization of commerce . . . [accompanied by] modern transportation and communication [that] have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." 355 U. S., at 222–223. But the mere act of sending a child to California to live with her mother is not a commercial act and connotes no intent to obtain or expectancy of receiving a corresponding benefit in the State that would make fair the assertion of that State's judicial jurisdiction.

Accordingly, we conclude that the appellant's motion to quash service, on the ground of lack of personal jurisdiction, was erroneously denied by the California courts. The judgment of the California Supreme Court is, therefore,

*Reversed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE WHITE and MR. JUSTICE POWELL join, dissenting.

The Court properly treats this case as presenting a single narrow question. That question is whether the California Supreme Court correctly "weighed" "the facts," *ante,* at 92, of this particular case in applying the settled "constitutional standard," *ibid.,* that before state courts may exercise *in*

*personam* jurisdiction over a nonresident, nondomiciliary parent of minor children domiciled in the State, it must appear that the nonresident has "certain minimum contacts [with the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington,* 326 U. S. 310, 316 (1945). The Court recognizes that "this determination is one in which few answers will be written 'in black and white,'" *ante,* at 92. I cannot say that the Court's determination against state-court *in personam* jurisdiction is implausible, but, though the issue is close, my independent weighing of the facts leads me to conclude, in agreement with the analysis and determination of the California Supreme Court, that appellant's connection with the State of California was not too attenuated, under the standards of reasonableness and fairness implicit in the Due Process Clause, to require him to conduct his defense in the California courts. I therefore dissent.