**PREMIER CORPORATION,**
**Plaintiff-Appellant,**

v.

**Joseph K. NEWSOM,**
**Defendant-Appellee.**

**PREMIER CORPORATION,**
**Plaintiff-Appellant,**

v.

**Marcelino CHAVEZ, Defendant-Appellee.**

**Nos. 78–1614, 78–1615.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 22, 1980.

Decided April 4, 1980.

Darryl G. Kaneko, Denver, Colo. (Bruce T. Wallace of Hooper, Hathaway, Fichera & Price, Ann Arbor, Mich., with him on the brief), for plaintiff-appellant.

Gregory L. Williams of Rothgerber, Appel & Powers, Denver, Colo., for defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

This case involves the Colorado long arm statute, C.R.S. 13–1–124 (1973). Premier Corporation is a Delaware corporation, with headquarters in Michigan. It also conducts business and maintains offices in Colorado. In separate actions, Premier brought a breach of contract action in a state court of Colorado against Dr. Newsom and Dr. Chavez, each of whom is a citizen of South Carolina. Both defendants are physicians, and each was served with a copy of the summons and complaint in South Carolina. On petitions for removal, both actions were removed to the United States District Court for the District of Colorado. Motions to remand were denied.

In federal district court the defendants filed motions to quash service of process on the ground that there was no valid service of process. The district court, after an evidentiary hearing that involved live testimony, several affidavits and depositions,

granted the motions and dismissed both actions on the ground that there was a lack of *in personam* jurisdiction over both defendants. Premier appeals. We affirm.

The background facts as they relate to the question of personal jurisdiction are not in any real dispute. As indicated, Dr. Newsom and Dr. Chavez are both citizens of South Carolina. Both are medical doctors and each wanted to make a financial investment which might serve as a tax shelter.

Also, as indicated, Premier is a Delaware corporation with headquarters in Michigan. Premier is engaged, *inter alia*, in the business of cattle breeding and management of cattle. In mid-1972, representatives of Premier contacted Dr. Newsom and Dr. Chavez in South Carolina in an effort to induce the doctors to make an investment in what was said to be a tax-sheltered cattle operation.* As explained by Premier's representatives, Premier proposed to sell cattle to the defendants, and then, for a management fee, Premier would thereafter manage, feed and maintain the cattle thus purchased by the defendants. Premier and the two doctors agreed to terms, and the parties executed three documents: (1) a representation statement; (2) a purchase agreement; and (3) a management contract. Specifically, Dr. Newsom bought 100 head of nonregistered breeding cows from Premier at $750 per head and then entered into a management contract with Premier whereby, for a management fee, Premier agreed to take care of the cattle thus purchased. Dr. Chavez bought 180 head of nonregistered breeding cows for $750 per head and contemporaneously therewith entered into a management contract with Premier whereby the latter agreed to take care of the cattle thus purchased, for a management fee.

The management contracts between Premier and Dr. Newsom and Dr. Chavez provided, in each instance, as follows: "The animals may be kept at such place or places as Premier may determine, with the under-standing, however, that Premier shall maintain supervision of the animals at all times."

As mentioned earlier, Premier had offices in Colorado, as well as maintaining several feeding areas within that state. Premier also maintained offices and feed lots in several other western states. It is agreed that some of the cattle purchased by Dr. Newsom and Dr. Chavez from Premier, and thereafter committed under the management contract to the care of Premier, were physically present within the State of Colorado. They had been placed there at the direction of Premier, who, under the management contract, had the right to feed the cattle wherever it pleased. Dr. Newsom and Dr. Chavez were not themselves concerned with the whereabouts of their cattle, such being a matter reserved to Premier under the management contract.

It was in this general setting that Premier brought suit in a state court of Colorado against Dr. Newsom and Dr. Chavez for breach of contract, alleging that money was due it under the management contract. Service of process was made in South Carolina on both defendants. After removal, the federal district court dismissed the action for lack of *in personam* jurisdiction.

The Federal Rules of Civil Procedure contemplate that *in personam* jurisdiction may be obtained by a federal district court in any manner permitted by state law of the particular state in which the federal district court is held. Fed.R.Civ.P. 4(e) provides, in pertinent part, as follows:

(e) *Same: Service Upon Party Not Inhabitant of or Found Within State. . .* Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment

---

* Premier's contacts with Dr. Newsom and Dr. Chavez were separate and unrelated, though identical in nature.

or similar seizure of his property located within the state, *service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.* (Emphasis added.)

The Colorado statute concerning long arm jurisdiction is C.R.S. 13–1–124 (1973), and provides, in pertinent part, as follows:

(1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state;

The district court held that the defendants, each of whom was a citizen of South Carolina, did not have sufficient "minimum contacts" with the State of Colorado to warrant the exercise by the federal district court in Colorado of personal jurisdiction over either defendant, citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Kulko v. California Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). We are disinclined to disturb the district court's resolution of the matter.

■ Whether in a particular case a nonresident defendant, who is served outside the forum state, has sufficient minimum contacts with the forum state to warrant the latter in exercising *in personam* jurisdiction over the person of such nonresident necessarily depends on the facts of the case at hand. *Kulko v. California Superior Court*, 436 U.S. at 92, 98 S.Ct. at 1697. In the instant case Dr. Newsom and Dr. Chavez were citizens of South Carolina, and for practical purposes have never been in Colorado. Premier's representatives traveled from Michigan to South Carolina and there entered into purchase and management contracts with the two doctors. Under the purchase contract, the defendants bought cattle from Premier. Under the management contract, Premier agreed to manage the cattle which the defendants had just purchased from Premier. One provision in the management contract permitted Premier to maintain the cattle wherever it wanted. Defendants' cattle, or some of them, were kept in Colorado by Premier, on its own initiative, without any direction by the defendants. We do not regard the fact that the defendants either knew, or could have ascertained, that some of their cattle were being cared for in Colorado to be a particularly significant fact. We agree with the district court that the totality of the facts and circumstances fails to disclose sufficient minimum contacts on the part of the defendants with the State of Colorado to justify the district court in exercising personal jurisdiction over either.

■ Premier argues, alternatively, that assuming the defendants themselves did not have the necessary minimum contacts, nevertheless the defendants were "present" within the State of Colorado by virtue of the acts of their agent, Premier, occurring within the state. The trial court declined to find that Premier was an agent for either of the defendants, as that term is used in the Colorado long arm statute. Be that as it may, even though service of process may comport with local state law on the subject, such service must also comport to the Fourteenth Amendment. A court may exercise personal jurisdiction over a nonresident defendant, served outside the forum state, only if there exists "minimum contacts" between the defendant and the forum state. Minimum contacts must be such that the maintenance of the suit "does not offend 'traditional notions' of fair play and substantial justice." *International Shoe Co. v. Washington, supra*, and *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 344, 85 L.Ed. 278 (1940). As indicated in the present case, the defendants' contacts with Colorado do not measure up to the fair play standard.

*Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), involves a different fact setting, but the following comment therein nonetheless has present pertinency:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. 357 U.S. at 253, 78 S.Ct. at 1240.

*Anderson v. Shiflett*, 435 F.2d 1036 (10th Cir. 1971) involves a fact situation similar to the instant one. In *Anderson* a citizen of Oklahoma went to Texas and there entered into a contract with a citizen of Texas for the performance of architectural services by the Oklahoma citizen. The contract provided that it should be governed by the state law of the principal place of business of the architect, which was Oklahoma. The Oklahoma architect, after executing the contract in Texas, returned to his place of business in Oklahoma City and there completed much of the work called for by the contract. When the Texas citizen abandoned the contract and refused payment of money due, the Oklahoma architect filed a breach of contract action in the United States District Court for the Western District of Oklahoma. The defendant was personally served in Texas. The defendant moved to quash service. The plaintiff relied on the Oklahoma long arm statute. The federal district court quashed service of process. On appeal, this Court affirmed. In affirming, we set forth the quotation from *Hanson* appearing above, and then commented as follows:

> We have here a single, isolated transaction in the form of a contract for personal service. The totality of the contacts with Oklahoma was the performance of certain phases of the work at the plaintiff's Oklahoma City office. Nothing in the record discloses the reasonable anticipation of contractual consequences in Oklahoma. To support jurisdiction, the plaintiff relies on his own unilateral activities. Under the decision in *Hanson v. Denckla*

this is not enough. To become subject to Oklahoma jurisdiction, the defendant must purposefully avail himself of the privilege of doing business in that state and thereby invoke the benefits and protections of its laws. The record before us does not satisfy this requirement. *Instead, it shows no more than the unilateral performance of contracted personal service in the forum.* The idea that such performance alone can subject the employer to the jurisdiction of the forum has frightening consequences. 435 F.2d at 1038. (Emphasis added.)

We regard the present case to be comparable to *Anderson*. In each case *in personam* jurisdiction was sought over a nonresident on the basis of the unilateral activities, pursuant to the terms of a contract, of the party seeking to invoke the jurisdiction of the forum state under its long-arm statute. In *Anderson* we rejected such a bootstrap operation, as we do here. To hold to the contrary would in the instant case mean that the defendants could be required to defend in any one of the fifty states where Premier chose to maintain the cattle. Such is not our idea of fair play, and a rule to such effect would have the "frightening consequences" referred to in *Anderson*.

We do not regard *Houston Fearless Corporation v. Teter*, 318 F.2d 822 (10th Cir. 1963), heavily relied on by Premier, to be particularly pertinent. In *Houston*, this Court was concerned with a venue question only. Jurisdiction, in *Houston*, was not an issue, inasmuch as the nonresident corporation there involved was served with process within the State of Colorado.

Judgment affirmed.