**Andrew K. BURT, Plaintiff-Appellant,**

**v.**

**The BOARD OF REGENTS OF the UNIVERSITY OF NEBRASKA and John F. Connolly, Defendants-Appellees.**

No. 82–2378.

United States Court of Appeals, Tenth Circuit.

March 20, 1985.

Rehearing Denied June 17, 1985.

F. James Donnelly of Hannon, Stutz, Dyer & Miller, Denver, Colo. (Robert J. Dyer III, Denver, Colo., with him on the brief), for plaintiff-appellant.

Thomas L. Roberts of Pryor, Carney & Johnson, P.C., Englewood, Colo. (Susan T. Smith, Englewood, Colo., with him on the brief), for defendants-appellees.

Before SEYMOUR and SETH, Circuit Judges, and ANDERSON,* District Judge.

SEYMOUR, Circuit Judge.

Andrew K. Burt, a Colorado resident at the time this action was filed, brought suit against the Board of Regents of the University of Nebraska and John F. Connolly, Chairman of the Department of Orthopedic Surgery at the University. Dr. Burt, a medical doctor, had completed a residency program in orthopedic surgery under Dr. Connolly at the University. Dr. Burt subsequently applied for staff privileges at several Colorado hospitals, which directed inquiries to Dr. Connolly about Dr. Burt's orthopedic residency and general medical competence. Dr. Connolly responded with a very unfavorable letter and Dr. Burt was denied staff privileges. Dr. Burt filed this suit seeking damages for defamation, breach of contract, interference with prospective advantage, outrageous conduct, and the deprivation of property and liberty interests protected by the United States Constitution. The district court granted defendants' motions to dismiss, ruling that the Board of Regents was immune under the Eleventh Amendment, and that the court did not have personal jurisdiction over Dr. Connolly. Dr. Burt appeals the jurisdictional issue, and we reverse.[1]

Dr. Burt alleges in his complaint that the statements by Dr. Connolly were false, willful and wanton, made with malice, and published in Colorado. He further alleges that as a result of these statements he was unable to practice medicine in Colorado. Dr. Burt asserts that the court has personal jurisdiction over Dr. Connolly pursuant to Colorado's long-arm statute,[2] which provides in pertinent part:

"Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and if a natural person his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

.      .      .      .      .

The commission of a tortious act within this state...."

Colo.Rev.Stat. § 13–1–124(1)(b) (1973).

In response, Dr. Connolly filed an affidavit asserting that he is a resident of Nebraska and that he has never done business of any kind in Colorado. Dr. Connolly further states that he owns no property in Colorado and was never physically present in Colorado in connection with the claim asserted by Dr. Burt.

The Colorado long-arm statute was intended to extend the jurisdiction of the Colorado courts to the fullest extent permitted by the due process clause of the United States Constitution. *Behagen v. Amateur Basketball Association of America*, 744 F.2d 731, 733 (10th Cir.1984). In this case the district court concluded that the action was technically within the reach of the long-arm statute because the alleged tort of defamation occurred in Colorado.[3]

---

* Honorable Aldon J. Anderson, Chief Judge, United States District Court for the District of Utah, sitting by designation.

**1.** Dr. Burt does not appeal the district court's ruling that the Board was immune. As an alternative ground for affirming the dismissal as to him, Dr. Connolly urges on appeal that he also is immune under the Eleventh Amendment. In addition, he contends that Nebraska is a more convenient forum for this action. These issues were not the basis for the district court's disposition and we do not address them here. Dr. Connolly is of course free to present these arguments to the district court on remand.

**2.** In diversity cases, the federal district court's jurisdiction is co-extensive with that of the state courts. *See* Fed.R.Civ.P. 4(e).

**3.** "The tort of libel is generally held to occur wherever the offending material is circulated." *Keeton v. Hustler Magazine, Inc.*, ―― U.S. ――,

The court held, however, that personal jurisdiction over Dr. Connolly was precluded by the requirements of federal due process because he lacked sufficient minimum contacts with the forum state.

Subsequent to the district court's decision below, the Supreme Court decided *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). We believe these two cases require us to reverse the district court's conclusion in this case.

The Court in both *Keeton* and *Calder* recognized that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton,* 104 S.Ct. at 1478 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)); *Calder,* 104 S.Ct. at 1486 (same). The plaintiff in *Keeton,* a New York resident, brought a libel action in New Hampshire against Hustler Magazine, an Ohio corporation with its principal place of business in California. The only connection between either the plaintiff or the magazine and New Hampshire was the sale in that state of the allegedly libelous material. In upholding personal jurisdiction, the Court agreed "that the 'fairness' of haling respondent into a New Hampshire court depends to some extent on whether respondent's activities relating to New Hampshire are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities." 104 S.Ct. at 1479. The Court then concluded:

> " ' "A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort." ' " *Leeper v. Leeper,* 114 N.H. 294, 298, 319 A.2d 626, 629 (1974)

104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984)

(quoting Restatement (Second) of Conflict of Laws § 36, Comment c (1971). This interest extends to libel actions brought by nonresidents. False statements of fact harm both the subject of the falsehood *and* the readers of the statement. New Hampshire may rightly employ its libel laws to discourage the deception of its citizens."

*Id.* Under *Keeton,* Colorado has a significant interest in the present case.

In *Calder,* a California resident brought a libel suit in California state court against, inter alia, two employees of a national magazine who were residents of Florida and who had prepared the alleged libelous magazine article in Florida. The California Court of Appeals held that personal jurisdiction over the Florida residents was proper. The Supreme Court noted:

> "[T]he [California] court concluded that a valid basis for jurisdiction existed on the theory that [the defendants] intended to, and did, cause tortious injury to respondent in California. The fact that the actions causing the effects in California were performed outside the State did not prevent the State from asserting jurisdiction over a cause of action arising out of those effects."

*Calder,* 104 S.Ct. at 1485–6 (footnote omitted). The Supreme Court affirmed, approving the "effects" test employed by the California court. *See id.* at 1486 n. 6. The Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California," *id.* at 1487, and held that "jurisdiction over [the Florida residents] in California is proper because of their intentional conduct in Florida calculated to cause injury to [the plaintiff] in California," *id.* at 1488.

■ We believe this analysis is dispositive of the jurisdictional issue in this case. Although the libel in *Calder* was pursuant to a commercial enterprise, whereas here the alleged defamation resulted from a single letter, we do not find this distinction

(citation omitted).

significant in view of the Court's repeated emphasis in *Calder* on the intentional nature of the defendants' conduct and its calculated injurious effect in the forum state. The Court in *Calder* was unpersuaded by the arguments of the defendant reporter and the defendant editor that they personally had no economic stake in their employer's sales in a distant state.

"[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works...."

*Id.* at 1487.

■ Nor are we persuaded by Dr. Connolly's claim that it violates due process to hale him into court in Colorado because the letter was, in effect, solicited by Dr. Burt, who gave Dr. Connolly's name to the hospitals. Dr. Burt solicited a letter of reference; he did not solicit a malicious falsehood. Taking Dr. Burt's allegations as true, as we must on a motion to dismiss, we hold that no due process notions of fairness are violated by requiring one who intentionally libels another to answer for the truth of his statements in any state where the libel causes harm to the victim. To the extent that Dr. Connolly's statements damaged Dr. Burt's reputation and his ability to practice his profession, the damage occurred in Colorado.

Accordingly, we conclude that the district court erred in its determination that it lacked personal jurisdiction over Dr. Connolly. The judgment is reversed on that ground and remanded for further proceedings.

SETH, Circuit Judge, dissenting:

I must respectfully dissent.

The majority relies entirely on *Calder v. Jones*, — U.S. —, 104 S.Ct. 1482, 79 L.Ed.2d 804, but in my view we have only half the elements relied on by the Court in *Calder*. There, the opinion places emphasis on the fact that the story concerned what the plaintiff did in California. Thus: "The allegedly libelous story concerned the California activities of a California resident." The Court also stated that the "article was drawn from California sources." The Court then stated the two elements:

"In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 [100 S.Ct. 559, 62 L.Ed.2d 490]...."

The Court so applies the "effects" theory where both "the focal point ... of the story and of the harm" was in California.

In the case before us the letter was, of course, sent to Colorado but the "focal" point of the story was Nebraska. The letter was about what had taken place in Nebraska not Colorado. The story was certainly not drawn from Colorado sources. The action was initiated by plaintiff. We thus have but half a *Calder*. The opinion in *Calder* quotes and relies on the usual minimum contact cases with no comment or criticism. It states at the outset of the opinion of the defendant:

"It publishes a national weekly newspaper with a total circulation of over 5 million. About 600,000 of those copies, almost twice the level of the next highest State, are sold in California."

The Court in a footnote quoted the exact circulation figures for the issue, 5,292,200 total and 604,431 in California. The Court had stated at the outset that:

"The article was published in a national magazine with a large circulation in California."

The opinion contains a mixture of the minimum contact facts, minimum contact cases, and the "effects" theory. Thus it should be assumed that the "effects" basis referred to by the Court is operative in the context of the minimum contacts doctrine

as pressed in the case therein quoted, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559. Thus "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *See also* our cases such as *Premier Corp. v. Newsom,* 620 F.2d 219 (10th Cir.), and *Anderson v. Shiflett,* 435 F.2d 1036 (10th Cir.), where in a specific jurisdiction case we required the minimum contact. *See also* the unilateral activity case, *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The unilateral activity of plaintiff was the solicitation in Colorado of the letter of recommendation from defendant in Nebraska. This action necessarily drew the response from defendant to Colorado. *See also Anderson v. Shiflett,* 435 F.2d 1036 (10th Cir.).

Again, the "story" was about what had taken place in Nebraska not Colorado. The *only* connection or contact the defendant had with Colorado was the letter he sent to the Colorado hospital in response to its request that he express an opinion as to the plaintiff's "medical knowledge, technical proficiency," and other qualifications. The plaintiff acknowledges that defendant had a duty to reply and that the hospital solicited the information. It is apparent that this solicitation can also be attributed to the plaintiff.

Again, the letter in issue was a required answer to the inquiry as to Dr. Burt's performance as an orthopedic resident in Nebraska, thus was not unsolicited or gratuitously made. Instead, the action was initiated by plaintiff. The majority opinion at page 245 quotes from *Calder* (104 S.Ct. 1482, at 1487), as to the brunt of the injury and impact on respondent. However, the sentence quoted in part continued with "and in which the *National Enquirer* has its largest circulation." The Court then continued:

> "Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article."

"Under these circumstances" thus includes the extent of the circulation in California and thus the contacts of defendants. The traditional cases were quoted following the above quotation. Again, we have the "contact" ingredient or element of what the Court calls the "impact." It is an impact theory but in a minimum contact context.

The trial court in its evaluation of the facts found that there was no factual basis for *in personam* jurisdiction over the plaintiff. It must be assumed that this included all the elements and thus a determination that the defendant could not anticipate being haled into court in Colorado. The trial court's findings are presumed to be correct. The jurisdictional issue requires and is based on an evaluation of the facts.

*Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, 104 S.Ct. 1473, 79 L.Ed.2d 790, was decided on the same day as was *Calder.* The contacts aspect was treated at some length. The Court referred to the regular monthly sales of thousands of magazines in New Hampshire and said this "cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." Thus there were sufficient "minimum contacts" between defendant and the State to meet due process requirements, quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559. The Court in *Keeton* was concerned with the relationship of the plaintiff to the forum State and the First Amendment issue. However, on the contacts element the Court said of the magazine:

> "But respondent is carrying on a 'part of its general business' in New Hampshire, and that is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, in part, in New Hampshire."

The Court said also that the harm was done in New Hampshire and there is "no justification" for restricting libel actions to defendant's forum, and:

> "The victim of a libel, like the victim of any other tort, may choose to bring suit in any forum with which the defendant has 'certain minimum contacts ... such

that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463 [61 S.Ct. 339, 342, 85 L.Ed. 278].'"

(The Court there quoted *International Shoe.*)

Thus the Court in *Keeton* in what appears to be a specific jurisdictional case or impact case includes the minimum contact doctrine. Again, we must assume that the "impact" theory is appropriate when found in the context of minimum contacts.

As the Court did in *Calder* and *Keeton,* and in our earlier cases, the contacts of the plaintiff with the forum State must be examined. This was again emphasized by the majority and the dissent in *Helicopteros Nacionales de Colombia v. Hall,* ── U.S. ──, 104 S.Ct. 1868, 80 L.Ed.2d 404, which followed *Keeton* and *Calder.*

In a challenge to *in personam* jurisdiction the plaintiff has the burden of showing the basis for jurisdiction. This is not a heavy burden, but reliance cannot be placed on unsupported allegations in the complaint. These allegations are not taken as true under these circumstances in view of the burden.

In 2 Moore's Federal Practice ¶ 4.41–1[3], at 4–473 (2d ed.), the authors state:

"On appeal, the trial court's findings on the jurisdictional question are presumptively correct and will be set aside only if clearly erroneous. Even where the trial court reached its decision on the basis of affidavits and other documentary evidence, and did not weigh conflicting evidence or evaluate witness credibility, the standard of review on appeal is the same. The court on appeal will not draw its own inferences and conclusions from the facts in the record."

A footnote quotes our *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358 (10th Cir.).

The trial judge's evaluation of the facts developed by the affidavits should be considered as any other fact determination. The weighing of the facts is necessary in the determination of jurisdiction. *Kulko v.*

*California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132.

I would affirm the judgment of the trial court.