457 So.2d 24 (1984)
Dorothy Nick, wife of/and Harold J. O'REILLY
v.
PRAT'S TRAVEL AGENCY, INC., et al.
No. CA-1566.
Court of Appeal of Louisiana, Fourth Circuit.
July 3, 1984.
Rehearing Denied October 29, 1984.[*]
Writ Denied December 7, 1984.
*25 Frederick R. Bott, Nancy J. Marshall, Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellant The Herbert Schneider Corp.
Thomas L. Giraud, Charles A. Verderame, Giraud, Cusimano & Verderame, New Orleans, for plaintiffs-appellees.
Before GULOTTA, BARRY and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, the Herbert Schneider Corporation ["Schneider"], appeals the trial court's judgment notwithstanding the verdict rendered in favor of plaintiffs, Dorothy Nick O'Reilly and Harold J. O'Reilly, and against Schneider in the amount of $5,471.00 in expenses and $20,000.00 for pain and suffering. We reverse and dismiss plaintiff's suit for lack of jurisdiction in personam.
Plaintiff's injuries occurred while she and her husband were on a group tour purchased from Prat's Travel Agency, Inc. ["Prat's"] in New Orleans. The tour was a Greyhound World Tours "Fall Foliage Tour." On the eighth day of the tour, October 1, 1978, a "skimobile" ride up Mount Cranmore in North Conway, New Hampshire, was scheduled. The skimobile ride was owned by Schneider, a New Hampshire corporation of five partners. To ascend the mountain, the rider stepped into a single-passenger car and rode, seated, up a tramway to a height of approximately three thousand feet. At this point, the rider stood up and stepped off the car. After enjoying the view, the rider took another car up a separate tramway to the top of the mountain. The cars continually circulated up and down the mountain at a speed of approximately three miles per hour. They did not stop for embarkation or disembarkation.
Plaintiff rode the skimobile up to the 3,000 foot point. She asked the operator at the disembarkation point if he was going to stop the car. He told her she could not stay in the car and instructed her on how to get off the car, repeating instructions she had before boarding the skimobile. He did not throw a switch that would have shut off the entire skimobile ride. Although the operator tried to physically help her out of the car, plaintiff stumbled and fell, fracturing her left femur.
Plaintiff was taken to a nearby hospital where she underwent surgery in which a large metal plate was mounted on the femur and bone from her hip was grafted onto the point of fracture. Her leg was then placed in a cast. On October 9, 1978, plaintiff and her husband flew home to New Orleans. Plaintiff's doctors testified that her fracture had healed well.
Plaintiff and her husband were refunded the unused portion of the tour, $539.89, from Greyhound Lines, Inc.
In their petition for damages filed April 18, 1979, plaintiffs named as defendants Prat's, Schneider, and Greyhound World Tours, Inc. and Greyhound Lines, Inc. ["Greyhound"]. Plaintiffs alleged that all of the defendants were liable for their failure to warn plaintiffs about the dangers of the skimobile ride. Plaintiffs also alleged Schneider was liable for its employee's negligent treatment of plaintiff at the disembarkation point of the ride.
Both Prat's and Greyhound brought third-party demands against Schneider. Schneider filed exceptions of lack of personal jurisdiction over the claims of plaintiffs, Greyhound, and Prat's against Schneider. Schneider also filed an exception of vagueness to plaintiffs' petition, alleging that plaintiffs had not enumerated activities of Schneider sufficient to constitute "transacting business" within the meaning of the Louisiana longarm statute. The trial court dismissed Schneider's exceptions as to Prat's and Greyhound and granted the exception of vagueness, ordering plaintiffs to submit an amended petition. The trial court deferred ruling on Schneider's exception of lack of personal jurisdiction against plaintiffs until plaintiffs' amended petition was submitted.
The ruling on Schneider's exception of lack of personal jurisdiction as to plaintiffs *26 was never made. Schneider reserved its rights under that exception in its answer to plaintiffs' petition and proceeded to participate fully in the trial, conducting a vigorous defense against all parties, including plaintiffs.
After the presentation of the evidence, each of the defendants moved for a directed verdict. These motions were overruled. A unanimous verdict was rendered by the jury, who answered the following interrogatories:

INTERROGATORIES TO THE JURY
1. Was Prat's Travel Agency, Inc. negligent?
YES___ NO X 
If your answer to No. 1 is "NO", proceed directly to question No. 2.
If your answer to No. 1 is "YES", answer question No. 1A.
1A. Was the negligence of Prat's Travel Agency, Inc. a proximate cause of the plaintiff's accident?
YES___ NO X 
If your answer to No. 1A is EITHER YES or NO, proceed to question No. 2.
2. Was Greyhound World Tours, Inc. and Greyhound Lines, Inc. negligent?
YES___ NO X 
If your answer to No. 2 is "NO", proceed directly to question No. 3
If your answer to No. 2 is "YES", answer question No. 2A.
2A. Was the negligence of Greyhound World Tours, Inc. and Greyhound Lines Inc. a proximate cause of the plaintiff's accident?
YES___ NO___
3. Was Herbert Schneider Inc. negligent?
YES X NO___
If your answer to No. 3 is "NO", proceed directly to question No. 4
If your answer to No. 3 is "YES", answer question No. 3A.
3A. Was the negligence of Herbert Schneider Inc. a proximate cause of the plaintiff's accident?
YES___ NO X 
If your answer to No. 3A is EITHER YES or NO, proceed to question No. 4.
4. If your answers to Nos. 1A, 2A AND 3A are "NO", then sign the verdict form and return to the courtroom.
If your answer to EITHER No. 1A or 2A or 3A is "YES", then answer question No. 5.
5. Was Dorothy Nick O'Reilly negligent?
YES X NO___
If your answer to No. 5 is "NO", proceed directly to question No. 6.
If your answer to No. 5 is "YES", answer question No. 5A.
5A. Was the negligence of Dorothy Nick O'Reilly a proximate cause of the accident?
YES___ NO X 
If your answer to No. 5A is "YES", then sign the verdict form and return to the courtroom.
If your answer to No. 5A is "NO", then answer question No. 6.
6. What amount of damages are the plaintiffs entitled to recover as a result of the accident?
$25,460.20
New Orleans, Louisiana
November 10, 1982
 ______________
 FOREMAN
Plaintiffs then moved for a judgment notwithstanding the verdict and, in the alternative, a new trial. Schneider moved for a verdict in accordance with the answers to the special interrogatories, dismissing plaintiffs' claims against Schneider, Prats, and Greyhound. The trial court denied Schneider's motion and rendered a judgment notwithstanding the verdict in favor of plaintiffs and against Schneider for $20,000.00 in pain and suffering and $5,471.00 in expenses.
On appeal, Schneider alleges that the trial court erred in (1) holding that Schneider had sufficient business activity in Louisiana for the court to exercise jurisdiction under La.R.S. 13:3201(a); and (2) failing to *27 render judgment pursuant to the jury's answers to special interrogatories, dismissing plaintiffs' claim against Schneider. Schneider asks this court to dismiss plaintiffs' claim against it (1) for lack of personal jurisdiction; (2) in a judgment rendered pursuant to the special interrogatories; or (3) in a judgment in Schneider's favor and against plaintiffs, rendered upon the merits of the record.
Plaintiffs respond that the court had personal jurisdiction over Schneider not only because Schneider was transacting sufficient business to come under La.R.S. 13:3201(a), but also because Schneider waived its exception of lack of personal jurisdiction by proceeding to trial when no judgment had been made on the exception. Plaintiff further responds that the judgment notwithstanding the verdict was a valid exercise of the trial court's discretion under La.C.C.P. Art. 1811. If the jury attempted to say that Schneider's negligence was not a proximate cause of plaintiff's injuries, plaintiffs assert, it was manifestly erroneous, as the record clearly establishes that Schneider's negligence was the proximate cause and that Schneider had the last clear chance to avoid the accident.
Because we hold that the trial court lacked personal jurisdiction over Schneider, we need not proceed to the merits of this case.
Schneider filed an exception of lack of personal jurisdiction against plaintiffs' claim. The trial court, however, announced that it would defer ruling on the exception until the vagueness in plaintiff's petition was cured.
In pertinent part, La.C.C.P. Art. 929 reads, "[t]he declinatory exception ... shall be tried and decided in advance of the trial of the case." Plaintiff cites this article and QuicKick, Inc. v. QuicKick International, 304 So.2d 402 (La.App. 1st Cir.1974), in support of the argument that Schneider waived the exception of lack of personal jurisdiction. The QuicKick court interpreted La.C.C.P. Art. 7, in light of Arts. 925 and 929, as follows:
Since the law does not require that an answer be filed at the same time as the declinatory exception in district courts, the clear import of the foregoing is that the filing of an answer subjects the defendant to the jurisdiction of the Court unless he has first insisted on a decision on his exception to the jurisdiction over his person. It would be completely inconsistent to permit a defendant to proceed to trial on the merits in a court which he claims to have no jurisdiction over his person, and permit him to reserve any rights under his exception which he has not insisted be decided prior to trial.

Id. at 406 (emphasis added). The court held that the defendant had waived his exception because, after filing it, defendant himself had moved the court to refer it to the merits rather than decide it in advance of trial. Schneider to the contrary, continued to reserve the exception. Considering that the trial judge had already ruled Schneider in court as to Defendant/Third-Party Plaintiffs Prat's and Greyhound, we do not find Schneider's failure to resort to motions to the trial judge, or more radically, to this court, fatal to his jurisdictional claim. Regardless of the ruling made on the exception, Schneider would have had to proceed through the trial.
There is no indication in the record that Schneider acquiesced in the delay in ruling on the exception. Furthermore, there has been no demonstration that Schneider intended to waive its claim. The failure of the trial court to decide this issue should not be imparted to Schneider, especially in light of Schneider's continued reservation of its right to except to jurisdiction. Schneider complied with all of the procedural requirements necessary to assert its exception. We know of no law or code authority placing any further burden upon it.
Plaintiffs assert jurisdiction over Schneider under the Louisiana Long-Arm Statute, La.R.S. 13:3201(a), which provides that "[a] court may exercise personal jurisdiction over a nonresident, who acts directly *28 or by an agent, as to a cause of action arising from the nonresident's (a) transacting any business in this state."
In enacting Louisiana's Long-Arm Statute, the legislative intent was to extend personal jurisdiction of Louisiana Courts over non-residents to the limits of due processto any non-resident having "minimum contacts" with Louisiana. See Green v. Luxury Auto Rentals, Inc., 422 So.2d 1365 (La.App. 1st Cir.1982); Soileau v. Evangeline Farmer's Co-op, 386 So.2d 179 (La.App. 3d Cir.1980); Drilling Engineering, Inc. v. Independent Indonesian American Pet. Co., 283 So.2d 687 (La. 1973); and Aucoin v. Hansen, 207 So.2d 834 (La.App. 3d Cir.1968).
The Soileau court elaborated on this point:
The finding of jurisdiction over non-residents involves an evaluation of the factual circumstances of the case in light of federal constitutional principles. In order for the proper exercise of jurisdiction in personam over a non-resident there must be sufficient minimum contacts between the non-resident defendant and the forum state to satisfy due process and "traditional notions of fair play and substantial justice" as required by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
At 386.
Circuit Judge Randall thoroughly outlined these federal constitutional principles in Burstein v. State Bar of California, 693 F.2d 511 (5th Cir.1982) which held that personal jurisdiction did not exist over a Louisiana resident's suit against the California Bar for alleged negligent misgrading of her bar examination:
Any determination as to fairness must result from a weighing of all the relevant facts; the inquiry is therefore highly specific to each case and not susceptible of easy determination. "[F]ew answers will be written `in black and white. The greys are dominant and even among them the shades are innumerable.'" Kulko v. Superior Court, 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (quoting Estin v. Estin, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948). Nevertheless, some guidance can be gleaned from previous cases, particularly in identifying the factors relevant to the decision.
The leading Supreme Court cases have evaluated the facts in light of a number of considerations. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), looked at the inconvenience to the defendant of having to litigate away from its residence, the relationship between the defendant's contacts with the forum and the cause of action, the quality and nature of the contacts, and the extent to which the defendant "exercise[d] the privilege of conducting activities within [the] state ... [and] enjoy[ed] the benefits and protection of the laws of that state." Id. at 319, 66 S.Ct. at 159.
In McGee v. International Life Insurance Co. [355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223] supra, the Court considered some new elements: the interest of the forum state in maintaining the suit, the difficulty to the plaintiff of pursuing the defendant to its home state, and the location of the likely witnesses. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed. 1283 (1958), laid particular emphasis on whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1239 (citing International Shoe, supra). Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), which applied the International Shoe line of cases to in rem jurisdiction, observed that if the law of the forum state would be used to decide the controversy, that would support but not establish personal jurisdiction. It also stressed Hanson's *29 concern with "purposeful availment" of the privileges of the forum. The Court reiterated that emphasis in Kulko v. Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978), and noted that the only reason the forum state in that case had any contact with the controversy was because the plaintiff had moved there. The Kulko Court also stated that a reasonable person in the defendant's place would not have expected his actions to result in having to litigate so far from his home, citing Shaffer v. Heitner, supra. Kulko, 436 U.S. at 97-8, 98 S.Ct. at 1699-1700. Finally, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), identified as relevant:
the plaintiff's interest in obtaining convenient and effective relief, ... at least when that interest is not adequately protected by the plaintiff's power to choose the forum ...; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies....

Id. at 292, 100 S.Ct. at 564 (citations omitted). The Court went on to state: "[T]he foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 297, 100 S.Ct. at 567 (citing Kulko v. Superior Court, supra, and Shaffer v. Heitner, supra).
At 520-521.
Whether a particular defendant has sufficient minimum contacts with Louisiana is to be determined from the facts and circumstances of each case. Drilling Engineering, supra.
Mr. Herbert Schneider testified that the corporation had never signed any contracts with anyone in Louisiana; that the company had never furnished any services to anyone in Louisiana; that no employee or agent of the corporation had ever been to Louisiana prior to this trial; that no advertising had been undertaken in Louisiana; that no promotional material was mailed out to Louisiana; and that no one from the corporation ever directly solicited business in Louisiana either in person or by mail.
Brochures describing the skimobile ride were sent to Prat's by a tour agency; these brochures, however, were neither paid for nor prepared by Schneider. The only advertisement placed by Schneider was one placed in the "AAA Tourbook", 1978 Edition for the States of Maine, New Hampshire and Vermont. The Tourbook was sent by the American Automobile Association to Prat's at Prat's request.
The only direct contact Schneider had with Louisiana was in responding, by mail, to Prat's letters requesting reservations for Prat's "Fall Foliage Tour" groups. Prat's had been reserving, by mail, rides on the skimobile since the travel agency was founded in 1971.
We do not find these contacts sufficient for the assertion of jurisdiction under La.R.S. 13:3201. In EK v. Nationwide Candy Division, Ltd., 403 So.2d 780 (La. App. 3d Cir.1981), the court considered similar circumstances before reversing the trial court judgment and dismissing plaintiff's suit for lack of personal jurisdiction. "The record reflects that Lammers was never physically present in the state of Louisiana, and that he has never met the plaintiff personally ... the record is clear that the only Louisiana contacts between defendant Lammers and the plaintiff were two telephone calls and a letter." At 784. The plaintiff in Gertler v. Gondola Ski Shop, Inc., 384 So.2d 856 (La.App. 4th Cir.1980) arranged through a New Orleans travel agent, to rent ski equipment from Gondola Ski Shop, a corporation located in Aspen, Colorado. The Ski Shop supplied plaintiff with Solomon equipment; plaintiff brought suit in Louisiana after she injured herself in a skiing accident, alleging that her ski bindings failed to release. In reversing the decision of the trial court and dismissing plaintiff's claims against Solomon for lack of personal jurisdiction, the court drew *30 analogies to the United States Supreme Court's decision in World-Wide Volkswagen, supra. "A party cannot be made defendant in Louisiana merely because it is foreseeable that his product might injure a Louisiana resident while the latter was using it in another state." At 859.
Looking back to the jurisprudence examined by the United States Court of Appeal for the 5th Circuit in Burstein, supra, we note the inconvenience to Schneider in litigating away from New Hampshire, and the fact that Schneider enjoys no benefits under or protection of the laws of Louisiana, factors important in International Shoe, supra. In the light of McGee, supra, we emphasize that the interest of Louisiana in maintaining the suit competes with New Hampshire's, as the accident occurred in New Hampshire and New Hampshire's law would apply[1]; it was the plaintiff who voluntarily traveled to the scene of the accident without any prompting by the defendant; and the likely witness working at the skimobile ride or at the hospital plaintiff was taken to would be located in Connecticut. We find an absence of the "purposeful availment" of rights and privileges of Louisiana Law stressed in Hanson v. Denckla, supra. Considering Kulko v. Superior Court, supra, we cannot find that a small corporation formed to run a skimobile ride in rural New Hampshire would reasonably have expected that confirming reservations requested by Prat's would result in litigation so far from home. Finally, we cannot find the "foreseeability" key in World-Wide Volkswagen, supra and conclude, as did the United States Supreme Court in that case, that personal jurisdiction over the defendant, Schneider, is lacking.
For the foregoing reasons, the judgment of the trial court is reversed and plaintiff's suit against Schneider is dismissed.
REVERSED.
NOTES
[*] Barry, J. voted to grant a rehearing.
[1] This is not a case of "false conflicts of law" as in Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973).