

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 3, 2017

**STATE OF TENNESSEE EX REL. BETTY ANN TORRES (STONE)
SPURLOCK v. CESAR G. TORRES**

**Appeal from the Chancery Court for Weakley County
No. 16,089    W. Michael Maloan, Chancellor**

_____

**No. W2016-01633-COA-R3-CV**

_____

In this child support action, the respondent father, who resides in Texas, filed a motion seeking to vacate the trial court's previous child support orders, alleging that the court had no personal jurisdiction over him.  The State of Tennessee ("the State"), acting on behalf of the mother, asserted that the father had consented to the court's exercise of personal jurisdiction by previously seeking administrative review of the child support award.  The trial court agreed, determining that its exercise of personal jurisdiction was proper.  The father has appealed.  Having determined that the trial court did not have a proper basis for the exercise of personal jurisdiction over the father, we reverse the trial court's adjudication concerning personal jurisdiction.  Because the trial court's prior child support orders are void, we remand this matter to the trial court for a determination concerning whether exceptional circumstances exist that would justify denying relief from the prior void orders.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Vanessa Saenz and Justin A. Schober, Nashville, Tennessee, for the appellant, Cesar G. Torres.

Herbert H. Slatery, III, Attorney General and Reporter, and Brian A. Pierce, Assistant Attorney General, for the appellee, State of Tennessee *ex rel.* Betty Ann Torres (Stone) Spurlock.

**OPINION**

**I. Factual and Procedural Background**

In February 2015, the State, acting on behalf of the plaintiff, Betty Ann Torres (Stone) Spurlock, filed a petition for contempt in the Chancery Court for Weakley County ("trial court") against the respondent, Cesar G. Torres, a resident of the State of Texas. In this petition, the State alleged that Ms. Spurlock was receiving child support enforcement services pursuant to Tennessee Code Annotated § 71-3-124 and Title IV-D of the Social Security Act, 42 U.S.C. § 601, *et seq.*, because Ms. Spurlock was participating in a state-sponsored public assistance program or had made application for such services. The State further averred that the trial court had entered an order on April 4, 2007, requiring Mr. Torres to pay $200 per month toward a child support arrearage owed to Ms. Spurlock for the benefit of their four minor children.[1] According to the State, this arrearage totaled $106,297 as of December 31, 2014. The relief requested included that (1) Mr. Torres be found in contempt; (2) a judgment for such arrearage be entered against Mr. Torres; (3) an income assignment be entered, requiring Mr. Torres's employer to deduct child support payments from his income; and (4) Mr. Torres's licenses be revoked. The record reflects that an income withholding order was thereafter sent to "Multi Framing Incorporated" in Lewisville, Texas.

On July 28, 2015, Mr. Torres's counsel filed a motion seeking to vacate the trial court's earlier child support orders by reason of lack of personal jurisdiction. In this motion, Mr. Torres entered a special limited appearance without waiving his objection on jurisdictional grounds. Mr. Torres admitted that he was the father of Ms. Spurlock's four children, explaining that he and Ms. Spurlock had been married and living in Texas with the children in 1998 when Ms. Spurlock suddenly removed the children to the State of Tennessee without Mr. Torres's knowledge or consent. Mr. Torres further asserted that he had traveled to Tennessee on one occasion in 1999 or 2000 in order to find the children, visiting with them for approximately two hours. According to Mr. Torres, he remained a resident of the State of Texas and had no other contacts with the State of Tennessee.

Mr. Torres contended that the instant action was controlled by the Tennessee Uniform Interstate Family Support Act ("UIFSA"), Tennessee Code Annotated § 36-5-2001, *et seq.*, because it involved an interstate child support action. According to Mr. Torres, none of the bases for exercising personal jurisdiction over a nonresident listed in Tennessee Code Annotated § 36-5-2201 were applicable to allow the trial court to exercise personal jurisdiction over him. Mr. Torres further argued that even if a sufficient basis for such exercise of personal jurisdiction did exist, he had never been

---

[1] The trial court had entered more than one prior child support order concerning Mr. Torres.

2

properly served with process. Mr. Torres thus sought relief from the trial court's prior child support orders pursuant to Tennessee Rule of Civil Procedure 60.02, asserting that such prior orders were void. An affidavit was filed in support of his motion.

By order entered October 30, 2015, the trial court found that a divorce was granted to Ms. Spurlock on July 26, 1999, following service on Mr. Torres by publication. The court also determined that the issue of child support was reserved in that order until personal service could be obtained on Mr. Torres. As the court explained, the State subsequently filed a petition seeking to set child support in December 2000, finding that "[t]he court record reflects [Mr. Torres] was personally served in Texas on March 21, 2001." The court further noted that child support was set by default in the amount of $796 per month retroactive to August 1, 1999.

The 2015 order further provides that the State thereafter filed a petition for modification on December 29, 2006. According to the trial court, a "United States Postal Service Domestic Return Receipt (green card) was signed by 'Cesar Torres' on January 25, 2007." Mr. Torres's child support obligation was subsequently modified to $673 per month, with an additional arrearage payment of $200 per month toward an arrearage of $73,232. The trial court also noted that when the State filed the recent petition for contempt, Mr. Torres was again purportedly served by mail, as evinced by a "green card" signed by "Cesar Torrez" on May 27, 2015.

Due to the fact that Ms. Spurlock had not appeared for the hearing, the trial court continued the matter until Ms. Spurlock could be summoned to court, finding her to be an indispensible party. The court indicated that a subsequent hearing would be conducted to determine whether the court maintained personal jurisdiction over Mr. Torres and whether its prior child support orders were valid, voidable, or void.

The next entry in the record is a February 10, 2016 "Order of Dismissal," providing that the State's petition for contempt was dismissed without prejudice. This order listed the basis for dismissal as "Respondent is making payments." On April 11, 2016, Mr. Torres filed a motion seeking a default judgment granting his motion to vacate, inasmuch as Ms. Spurlock had failed to appear or respond to his earlier motion.

The trial court conducted a hearing with respect to Mr. Torres's motion to vacate on June 24, 2016. The court's subsequent order, entered on July 5, 2016, stated that Ms. Spurlock was present for the hearing but that no testimony was given. The court's order delineated the eight bases for exercising personal jurisdiction over a nonresident defendant in order to establish a child support award pursuant to Tennessee Code Annotated § 36-5-2201.[2] The court determined that subsection (2), concerning an

---

[2] The trial court correctly applied the version of Tennessee Code Annotated § 36-5-2201 that was in effect

individual who submits to the jurisdiction of the court, constituted a proper basis for asserting personal jurisdiction over Mr. Torres. The court found that Mr. Torres "requested an administrative review of a child support arrearage on November 19, 2002," which was "in effect 'filing a responsive pleading having the effect of waiving any contest to personal jurisdiction.'"

The trial court also determined that personal jurisdiction regarding Mr. Torres could be predicated on subsection (8), which the court described as a "catch all" provision. In support, the court noted that Mr. Torres was personally served with process in Texas in 2001, was also served by mail in 2007 and 2015, had visited the children in Tennessee, and had made some child support payments for the children's benefit while they were residing in Tennessee. The court also found that Mr. Torres failed to challenge jurisdiction "within a reasonable time as required by Rule 60 of the Tennessee Rules of Civil Procedure." The court therefore denied Mr. Torres's motion to vacate the prior child support orders. Mr. Torres timely appealed.

## II. Issues Presented

Mr. Torres presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that a request for administrative review of a child support arrearage constitutes "filing a responsive document having the effect of waiving any contest to personal jurisdiction" pursuant to Tennessee Code Annotated § 36-5-2201(2).

2. Whether the trial court erred by determining that Mr. Torres had sufficient contacts with Tennessee to satisfy Tennessee Code Annotated § 36-5-2201(8).

3. Whether the trial court erred by determining that there was no factual evidence to overcome the presumption of valid service of process in 2001 and 2007.

---

at the time this action was filed. In 2010, the General Assembly repealed and reenacted the Tennessee Uniform Interstate Family Support Act. *See* 2010 Tenn. Pub. Acts, Ch. 901 (H.B. 3647). The subsections at issue in this appeal are now designated as -2201(a)(2) and (a)(8).

The State raises a single additional issue, which we have also restated slightly:

4.    Whether the trial court properly denied Mr. Torres's motion seeking to vacate the prior child support orders.

### III.  Standard of Review

Mr. Torres sought to vacate the trial court's prior orders pursuant to Tennessee Rule of Civil Procedure 60.02(3), arguing that the orders were void for lack of personal jurisdiction.  *See Hood v. Jenkins*, 432 S.W.3d 814, 825 (Tenn. 2013) ("[A] void judgment is one that is invalid on its face because the issuing court either lacked subject matter or personal jurisdiction over the proceedings, or the judgment itself was outside of the pleadings.").[3]  As our Supreme Court has explained regarding the proper standard of review with respect to a denial of relief pursuant to Tennessee Rule of Civil Procedure 60.02(3):

> In general, we review a trial court's ruling on a request for relief from a final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure ("Tennessee Rule 60.02") pursuant to the abuse of discretion standard.  *Discover Bank v. Morgan,* 363 S.W.3d 479, 487 (Tenn. 2012) (citing *Henry v. Goins,* 104 S.W.3d 475, 479 (Tenn. 2003)).  We have not previously considered whether this standard applies to a trial court's ruling on a motion alleging that a judgment is void for lack of jurisdiction under Tennessee Rule 60.02(3).  Nevertheless, we have previously held that "[w]hether a trial court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." *Furlough v. Spherion Atl. Workforce, LLC,* 397 S.W.3d 114, 122 (Tenn. 2013) (citing *Word v. Metro Air Servs., Inc.,* 377 S.W.3d 671, 674 (Tenn. 2012)).  Moreover "[a] decision regarding the exercise of personal jurisdiction over a defendant involves a question of law" to which de novo review applies, *Gordon v. Greenview Hosp., Inc.,* 300 S.W.3d 635, 645 (Tenn. 2009), and de novo review also applies when we are interpreting the Tennessee Rules of Civil Procedure, *Thomas v. Oldfield,* 279 S.W.3d 259, 261 (Tenn. 2009).
>
> Furthermore, when interpreting our own rules of civil procedure, we consult and are guided by the interpretation that has been applied to

---

[3] "Nevertheless, a judgment of a court of general jurisdiction is presumed to be valid and will be held void only when 'its invalidity is disclosed by the face of that judgment, or in the record of the case in which that judgment was rendered.'"  *Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015) (quoting *Giles v. State ex rel. Giles,* 235 S.W.2d 24, 28 (Tenn. 1950)).

comparable federal rules of procedure. *Id.* at 261-62; *see also Williamson Cnty. v. Twin Lawn Dev. Co.,* 498 S.W.2d 317, 320 (Tenn. 1973) ("[O]ur Rules having been taken from the Federal Rules of Civil Procedure, and the object of our virtual adoption of the federal rules being to have similar rules of procedure in state trial courts and federal district courts, it is proper that we look to the interpretation of the comparable Federal Rule.").

Rule 60(b)(4) of the Federal Rules of Civil Procedure ("Federal Rule 60(b)(4)") is comparable, indeed, identical to Tennessee Rule 60.02(3). Federal courts apply de novo review when considering a district court's ruling on a Federal Rule 60(b)(4) motion. *See Cent. Vermont Pub. Serv. Corp. v. Herbert,* 341 F.3d 186, 189 (2d Cir. 2003) ("Almost every Circuit has adopted de novo review of [Federal] Rule 60(b)(4) motions, and we know of no Circuit that defers to the district court on a [Federal] Rule 60(b)(4) ruling." (citing *Vinten v. Jeantot Marine Alliances, S.A.,* 191 F. Supp. 2d 642, 649-50 & nn. 12-13 (D.S.C. 2002) (collecting cases)); *Jackson v. FIE Corp.,* 302 F.3d 515, 522 (5th Cir. 2002) ("[W]e review Rule 60(b)(4) challenges [to a void judgment] de novo "because it is 'a per se abuse of discretion for a district court to deny a motion to vacate a void judgment.'" (quoting *Carter v. Fenner,* 136 F.3d 1000, 1005 (5th Cir. 1998)); *Burke v. Smith,* 252 F.3d 1260, 1263 (11th Cir. 2001) (stating that de novo review applies to a federal district court's ruling on a motion for relief from a void judgment based on Rule 60(b)(4) of the Federal Rules of Civil Procedure "'because the question of the validity of a judgment is a legal one.'" (quoting *Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1469 (9th Cir. 1995)))). We agree with the rationale of these decisions and will apply de novo review, with no presumption of correctness, when reviewing a trial court's ruling on a Tennessee Rule 60.02(3) motion to set aside a judgment as void. Any factual findings a trial court makes shall be reviewed de novo, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d).

*Turner v. Turner*, 473 S.W.3d 257, 268-69 (Tenn. 2015).

IV. Personal Jurisdiction Pursuant to Tennessee Code Annotated § 36-5-2201

It is undisputed that Mr. Torres is a resident of the State of Texas. Therefore, the parties concede that this action is controlled by the Tennessee Uniform Interstate Family Support Act, Tennessee Code Annotated § 36-5-2001, *et seq.*, because it involves an interstate child support action. According to Mr. Torres's argument, the trial court's prior child support orders are void because none of the bases for exercising personal

jurisdiction over a nonresident listed in Tennessee Code Annotated § 36-5-2201 were applicable in this matter to permit the trial court to exercise personal jurisdiction over him.

As our Supreme Court has explained with regard to personal jurisdiction:

> The lawful authority of a court to adjudicate a controversy brought before it depends upon that court having jurisdiction of the subject matter and jurisdiction of the parties. *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn. 1994); *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown,* 155 Tenn. 530, 296 S.W. 356, 358 (1927). Subject matter jurisdiction refers to the power of a court to adjudicate the particular category or type of case brought before it. *Estate of Brown,* 402 S.W.3d 193, 198-99 (Tenn. 2013); *Chapman v. DaVita, Inc.,* 380 S.W.3d 710, 712 (Tenn. 2012); *Word* [*v. Metro Air Servs., Inc.*], 377 S.W.3d [671,] 674 [(Tenn. 2012)]. Personal jurisdiction refers to the power of a court over the parties to the controversy to render a binding judgment. *Landers,* 872 S.W.2d at 675. The concepts of subject matter jurisdiction and personal jurisdiction are fundamentally different. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *Landers,* 872 S.W.2d at 675. Subject matter jurisdiction confines judicial power to the boundaries drawn in constitutional and statutory provisions. *Ins. Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099; *Word,* 377 S.W.3d at 674; *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn. 2000).
>
> * * *
>
> By contrast, personal jurisdiction recognizes and protects an individual liberty interest that flows from the Due Process Clause and requires that maintenance of the suit "not offend 'traditional notions of fair play and substantial justice.'" *Ins. Corp. of Ireland,* 456 U.S. at 702, 102 S.Ct. 2099 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Id.* at 703, 102 S.Ct. 2099. Because the requirement of personal jurisdiction functions to protect an individual right, it can, like other such rights, be waived. *Id.; Landers,* 872 S.W.2d at 675.

*Turner*, 473 S.W.3d at 269-70.

Regarding interstate child support actions and personal jurisdiction, Tennessee Code Annotated § 36-5-2201 (2001) provides:

> In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
>
> (1) The individual is personally served with notice within this state;
>
> (2) The individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
>
> (3) The individual resided with the child in this state;
>
> (4) The individual resided in this state and provided prenatal expenses or support for the child;
>
> (5) The child resides in this state as a result of the acts or directives of the individual;
>
> (6) The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
>
> (7) The individual asserted parentage in the putative father registry maintained in this state by the department of children's services; or
>
> (8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

The trial court determined that two of the above-listed bases, subsection (2) and subsection (8), would be applicable for it to exercise personal jurisdiction over Mr. Torres. We will address each of these subsections in turn.

## A. Tennessee Code Annotated § 36-5-2201(2)

Tennessee Code Annotated § 36-5-2201(2) states that personal jurisdiction may be exercised over a nonresident when the "individual submits to the jurisdiction of this state by consent in a record, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction." It is

undisputed that Mr. Torres has neither entered a general appearance in this matter nor consented to the trial court's jurisdiction in a record. The court instead found that Mr. Torres "requested an administrative review of a child support arrearage on November 19, 2002," which was "in effect 'filing a responsive pleading having the effect of waiving any contest to personal jurisdiction.'" Such request for administrative review, if it was in written form, does not appear in the appellate record.[4]

In his affidavit filed with the trial court, Mr. Torres admitted that he received a letter from the State via regular mail in approximately 2002 or 2003, informing him that he owed child support in Tennessee. Mr. Torres explained that he consulted an attorney in Texas at that time, who told him that the matter would have to be dealt with in Tennessee. Mr. Torres further stated that he did not hire the Texas attorney because the attorney informed Mr. Torres that he could do nothing to help. In his appellate brief, Mr. Torres professes no knowledge of a request for administrative review referenced in the trial court's final order. Mr. Torres argues that assuming such a document does exist, it would not constitute "a responsive document having the effect of waiving any contest to personal jurisdiction." *See* Tenn. Code Ann. § 36-5-2201(2).

The official comments to Tennessee Code Annotated § 36-5-2201 provide: "Subsection (2) expresses the principle that a nonresident party concedes personal jurisdiction by seeking affirmative relief or by submitting to the jurisdiction by answering or entering an appearance." Furthermore, this Court has construed this statutory subsection as follows:

> The statute is consistent with the general rule that a party who makes a general appearance and does not object to the court's personal jurisdiction will be deemed to have waived the party's objection. *Tennessee Dep't. of Human Serv's v. Daniel,* 659 S.W.2d 625, 626 (Tenn. Ct. App. 1983). General appearances consist of acts from which it can reasonably be inferred that the party recognizes and submits itself to the jurisdiction of the court. *Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 99-100 (Tenn. 1984). A general appearance may be made by the filing of pleadings or orally in open court. Any appearance that contests the merits of the complaint without raising the jurisdictional defense is deemed to be a general appearance. *P.E.K. v. J.M.,* 52 S.W.3d 653 (Tenn. Ct. App. 2001).

---

[4] In its brief, the State contends that this request for review was in the form of a letter from a Texas attorney. On March 10, 2017, the State filed a motion with this Court requesting supplementation of the record with its pretrial brief and attachments, which purportedly included a copy of this letter. The State's motion was denied on March 14, 2017, because the motion did not comply with the requirements of Tennessee Rule of Appellate Procedure 22. The State filed no further motions.

*In re J.B.W.*, No. M2007-02541-COA-R9-CV, 2007 WL 4562885, at *2 (Tenn. Ct. App. Dec. 27, 2007). *See Cliburn v. Bergeron*, No. M2001-03157-COA-R3-CV, 2002 WL 31890868, at *12 (Tenn. Ct. App. Dec. 31, 2002) (explaining that a nonresident parent who filed motions in the Tennessee court seeking affirmative relief submitted himself to the jurisdiction of the Tennessee trial court and waived any objection to lack of personal jurisdiction); *see, e.g.*, *Dooley v. Dooley*, 980 S.W.2d 369, 372 (Tenn. Ct. App. 1998) ("Father's action in this [pre-UIFSA] case in entering into an agreed order, coupled with filing a motion seeking to modify the support provisions of the trial court's order constitutes an appearance.").

Assuming, *arguendo*, that Mr. Torres sent a letter or some type of document to the State seeking administrative review of his child support obligation, such a request would not be sufficient to constitute an answer or appearance permitting the trial court to exercise personal jurisdiction in this matter. According to the record before this Court, Mr. Torres filed no pleadings in this case prior to his motion to vacate, wherein he explicitly reserved his jurisdictional objection. A letter or other document sent to the State that was not intended to be filed with the trial court would not constitute the filing of a pleading sufficient to waive the issue of personal jurisdiction. *See Dooley*, 980 S.W.2d at 371 (explaining that the nonresident parent's attorney's act of mailing a letter and an answer to the resident parent's attorney did not constitute a waiver of personal jurisdiction issue because the answer was never filed with the court).

Furthermore, as our Supreme Court has explained concerning entry of an appearance:

> It is recognized that an appearance may be expressly made by formal written or oral declaration, or record entry, to the effect that the defendant appears, or it may be implied from some act done with the intention of appearing and submitting to the court's jurisdiction. However, before an appearance will be found by implication, it must be shown from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other than one contesting only the jurisdiction of the court or by reason of some act or proceeding recognizing the case as being in court. An express appearance may be made by filing with the clerk a written direction to enter the appearance of the defendant, by formal record entry, oral announcement in open court, acceptance of service by the defendant's attorney, or by filing in the cause a paper which either waives service of process or which both waives service of process and recites the entry of an appearance. These examples are not exhaustive but merely suggestive of the many means of making an appearance.

On the other hand, although an act of a defendant may have some relation to the cause, it does not constitute a general appearance, if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, and no affirmative action is sought from the court. Thus, it has been held that the making of a written request by a defendant to suspend legal proceedings did not constitute an appearance.

We conclude that the facts in this case failed to furnish any basis for finding that the defendant appeared in this action prior to entry of the default judgment. The letter written by Mr. Lemmon [the defendant's representative] to the attorney for the plaintiff accompanied by a return of the summons and copy of the complaint served upon the defendant was not a recognition by the defendant that it was properly in the jurisdiction of the court but amounted to a rejection of the suit.

*Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 99-100 (Tenn. 1984) (internal citations omitted). Inasmuch as Mr. Torres has not entered a general appearance in this matter and also has not filed a "responsive document having the effect of waiving any contest to personal jurisdiction," *see* Tenn. Code Ann. § 36-5-2201(2), we determine that the trial court's reliance on subsection (2) as a basis for exercising personal jurisdiction over Mr. Torres was in error.

B. Tennessee Code Annotated § 36-5-2201(8)

The trial court also determined that subsection (8) constitued a proper basis for the court's exercise of personal jurisdiction over Mr. Torres. *See* Tenn. Code Ann. § 36-5-2201 (8) (2001) ("There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction."). The court found as factual support for this determination that: (1) Mr. Torres was personally served with process in 2001 in Texas, (2) Mr. Torres signed receipts for service by registered mail in 2007 and 2015, (3) Mr. Torres visited the children in Tennessee, and (4) Mr. Torres made some child support payments for the benefit of the children while they were living in Tennessee.

The official comments to Tennessee Code Annotated § 36-5-2201 provide:

[S]ubsection (8) tracks the broad, catch-all provisions found in many state statutes, including California, Civ. P. Code § 410.10 (1973); New York, [New York Family Court Act § 154], and Texas, [Texas Family Code § 102.011]. Note, however, that the California provision, standing alone, was

found to be inadequate to sustain a child support order under the facts presented in Kulko v. Superior Court of California for San Francisco, 436 U.S. 84 (1978).

In *Kulko v. Superior Court of Cal. in & for City & Cty. of San Francisco*, 436 U.S. 84, 94 (1978), the United States Supreme Court held that the father, who was a resident of New York, had not "purposefully availed himself" of the benefits of California law by agreeing to allow his minor child to reside in California with her mother. Inasmuch as the father's only other contacts with California included two short visits prior to the child support dispute, the High Court determined that exercise of personal jurisdiction by the California courts over the father would violate the Due Process Clause of the Fourteenth Amendment. *Id*. The Court noted that it was of no consequence that the father's expenses in New York had arguably been diminished or that his acquiescence in the child's residing in California caused an "effect" in that state. *Id*. at 95.

The *Kulko* Court also discredited the argument that California had "substantial interests in protecting the welfare of its minor residents" and in facilitating child support actions on their behalf. *Id*. at 100. Although the Court recited that the father had been paying child support to the mother in California, the Court apparently found this circumstance to be inconsequential, inasmuch as this fact was not discussed in the Court's personal jurisdiction analysis. Rather, because it was the mother who had chosen to move to California, the Court ruled:

> "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State . . . ."

*Kulko*, 436 U.S. at 93-94 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Upon a review of the record, we determine the trial court's reliance on subsection (8) of the statute as a means to exercise personal jurisdiction over Mr. Torres based upon the facts of this case to be in error. As the Tennessee Supreme Court has explained with respect to personal jurisdiction and due process:

> The authority of courts to exercise personal jurisdiction over nonresident defendants is circumscribed by the Due Process Clause of the Fourteenth Amendment. When the issue of personal jurisdiction arises, due process obligates the courts to ascertain whether it is "fair and substantially just to both parties to have the case tried in the state where the plaintiff has

chosen to bring the action." *Masada Inv. Corp. v. Allen,* 697 S.W.2d [332,] 335 [(Tenn. 1985)] (quoting *Shelby Mut. Ins. Co. v. Moore,* 645 S.W.2d [242,] 246 [(Tenn. Ct. App. 1981)]); *see also Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.,* 832 S.W.2d [572,] 575 [(Tenn. Ct. App. 1992)]; 16 James Wm. Moore, *Moore's Federal Practice* § 108.41[1], at 108-47 (3d ed. 2009) (hereinafter "16 *Moore's Federal Practice* ").

Tennessee courts have generally held that the due process requirements of the Constitution of Tennessee are co-extensive with those of the United States Constitution. *Gallaher v. Elam,* 104 S.W.3d 455, 463 (Tenn. 2003); *Newton v. Cox,* 878 S.W.2d 105, 110 (Tenn. 1994). We have also drawn helpful guidance from the decisions of the federal courts, particularly the United States Supreme Court, with regard to the application of due process principles to the exercise of personal jurisdiction over the nonresident defendants. . . .

Approximately sixty years ago, the United States Supreme Court noted that personal jurisdiction could be exercised over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)); *see also J.I. Case Corp. v. Williams,* 832 S.W.2d 530, 531-32 (Tenn. 1992). This is a two-part test which requires evaluating whether the requisite minimum contacts are present and whether the exercise of jurisdiction is fair. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Davis Kidd Booksellers, Inc. v. Day-Impex, Ltd.,* 832 S.W.2d at 575.

The defendant's contacts with the forum state need not be physical, and the court will primarily examine the quantity of the contacts, their nature and quality, and the relationship between the contacts and the cause of action. *Masada Inv. Corp. v. Allen,* 697 S.W.2d at 334. As part of its evaluation of the reasonableness of exercising jurisdiction, the court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94

13

L.Ed.2d 92 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Federal and state courts now recognize two varieties of personal jurisdiction—specific jurisdiction and general jurisdiction. The United States Supreme Court first distinguished between specific and general jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This Court followed suit in 1992 in *J.I. Case Corp. v. Williams,* 832 S.W.2d at 532.

Specific jurisdiction may be asserted when the plaintiff's cause of action arises from or is related to the nonresident defendant's activities in or contacts with the forum state. To invoke specific jurisdiction, a plaintiff must show (1) that the nonresident defendant has purposely established significant contact with the forum state and (2) that the plaintiff's cause of action arises out of or is related to these activities or contacts. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472, 105 S.Ct. 2174. The nonresident defendant's contacts with the forum state must be sufficient to enable a court to conclude that the defendant "should reasonably anticipate being haled into court [in the forum state]." *Lindsey v. Trinity Commc'ns, Inc.,* 275 S.W.3d 411, 418 (Tenn. 2009) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559). If the plaintiff can make that showing, the defendant will have the burden of showing that the exercise of specific jurisdiction would be unfair. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 477, 105 S.Ct. 2174; 16 *Moore's Federal Practice* §§ 108.42[1], at 108-54, 108.42[6], at 108-77.

*Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646-48 (Tenn. 2009).

In the case at bar, the only contact that Mr. Torres had with Tennessee was his single two-hour visit to Tennessee to locate the children in 1999 or 2000. This one visit, standing alone, is clearly insufficient to establish minimum contacts with Tennessee. *See Isaacson v. Fenton*, No. 03A01-9804-JV-00119, 1998 WL 429654, at *4 (Tenn. Ct. App. July 30, 1998) ("[T]he respondent's one short visit to Tennessee, standing alone, does not satisfy the constitutional requirement of minimum contacts."). Otherwise, Mr. Torres resided in Texas and did not "purposefully avail himself" of the benefits of Tennessee law in any manner. *See Kulko*, 436 U.S. at 93-94. Unlike the father in *Kulko*, Mr. Torres claims that he did not agree to allow the parties' children to move to Tennessee. The fact that Mr. Torres might have paid child support to Ms. Spurlock that she received in Tennessee is inconsequential, as is any argument by the State that it has an interest in

facilitating a child support action on the children's behalf. *Id*. at 93-94, 100. Although the children have been living in Tennessee with Ms. Spurlock for many years,

> "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State . . . ."

*Id*. at 93-94 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Furthermore, the fact that Mr. Torres may have been served with process in Texas is also of no consequence because Mr. Torres did not have sufficient minimum contacts with Tennessee such that he could be subjected to personal jurisdiction. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) ("Personal jurisdiction of non-resident defendants may be obtained by service of process . . . if, and only if, the non-resident defendant has such minimum contacts with this state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985) ("In determining whether or not a state can assert long-arm jurisdiction, due process requires that a non-resident defendant be subjected to a judgment *in personam* only if he has minimum contacts with the forum . . . ."). We therefore determine that the trial court erred in relying on Tennessee Code Annotated § 36-5-2201(8) as a basis for exercising personal jurisdiction over Mr. Torres. We also determine that Mr. Torres's issue concerning whether the service of process upon him was valid is pretermitted as moot.[5] We conclude that the trial court's prior orders of child support were void for lack of personal jurisdiction.

## V. Exceptional Circumstances

The State argues that even if the trial court lacked personal jurisdiction over Mr. Torres so as to render its prior child support orders void, the court was nonetheless justified in denying Mr. Torres's motion to vacate due to the existence of exceptional circumstances. In *Turner,* our Supreme Court explained that "relief from a void judgment may be denied if certain exceptional circumstances exist." *See Turner*, 473

---

[5] We note that although the trial court determined that Mr. Torres failed to challenge personal jurisdiction within a reasonable time, our Supreme Court has explained that "void judgments may be attacked at any time" and that the "reasonable time filing requirements thus may not be applied to bar motions seeking relief from void judgments pursuant to Tennessee Rule [of Civil Procedure] 60.02(3)." *See Turner*, 473 S.W.3d at 279.

S.W.3d at 279.  The Court, relying on Restatement (Second) of Judgments § 66 (1982), determined that such exceptional circumstances could be shown when:

> (1) The party seeking relief, after having had actual notice of the judgment, manifested an intention to treat the judgment as valid; and

> (2) Granting the relief would impair another person's substantial interest of reliance on the judgment.

*Turner*, 473 S.W.3d at 280.  Although the trial court acknowledged at the hearing on Mr. Torres's motion that the presence of exceptional circumstances could justify denying relief from a void judgment pursuant to *Turner*, the court did not expressly determine in its subsequent order whether such circumstances existed in this case.[6]

By determining that Mr. Torres's motion to vacate should be overruled and the trial court's previous child support orders held valid, the trial court did not reach the issue of whether exceptional circumstances existed so as to justify denying relief from a void judgment.  Because the trial court made no ruling regarding whether such exceptional circumstances existed in this case, we must remand this matter to the court for such determination following a hearing.  *See Turner*, 473 S.W.3d at 282.  As stated in *Turner*, upon remand, the court will need to determine whether (1) after receiving actual notice of the prior orders, Mr. Torres manifested an intention to treat those orders as valid and (2) whether vacating those orders would impair Ms. Spurlock's substantial interest of reliance on the orders.  *See id*. at 282-83.  The hearing on remand will afford the parties an opportunity to be heard and to present proof relevant to any exceptional circumstances.

## VI.  Conclusion

For the foregoing reasons, we reverse the trial court's determination that it maintained a valid basis for exercising personal jurisdiction over Mr. Torres.  We conclude that the trial court's prior child support orders are void for lack of personal jurisdiction.  We remand this matter to the trial court for a determination concerning whether exceptional circumstances exist that would justify denying relief from the prior void orders.  Costs on appeal are taxed to the appellee, State of Tennessee *ex rel.* Betty Ann Torres (Stone) Spurlock.

---

[6] In its earlier October 30, 2015 order, the trial court indicated that if it subsequently determined the prior child support orders to be void, it would consider "whether there are exceptional circumstances to deny relief to the defendant in accordance with the recent Tennessee Supreme Court decision in *Turner v. Turner*, No. W2013-01833-SC-R11-CV, filed October 21, 2015."

_____
THOMAS R. FRIERSON, II, JUDGE