**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ENERGY TRANSFER EQUITY, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. N19C-11-009 EMD CCLD |
| v. | ) | |
| | ) | |
| TWIN CITY FIRE INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: June 24, 2020
Decided: September 25, 2020

*Upon Defendants Twin City Fire Insurance Company, Allied World National Assurance Company, and Navigator Insurance Company's Motion to Dismiss for Lack of Personal Jurisdiction,*
***DENIED***

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Robin L. Cohen, Esquire, Adam Ziffer, Esquire, David Dehoney, Esquire, McKool Smith, P.C., New York, New York. *Attorneys for Plaintiffs Energy Transfer Equity L.P., Regency GP LP, and Regency GP LLC.*

Robert J. Katzenstein, Esquire, Robert K. Beste, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware, John E. Black, Jr., Esquire, Peter F. Lovato, III, Esquire, W. Joel Vander Vliet, Esquire, Skarzynski Marick & Black LLP, Chicago, Illinois, James Sanders, Esquire, Clyde & Co. US LLP, Chicago, Illinois. *Attorneys for Twin City Fire Insurance Company, Allied World National Assurance Company, and Navigator Insurance Company*

**DAVIS, J.**

## I.    INTRODUCTION

This insurance coverage dispute is assigned to the Complex Commercial Litigation Division of the Court. On November 1, 2019, Plaintiffs Energy Transfer Equity, L.P. ("Energy Transfer"), Regency GP LP, and Regency GP LLC (collectively, the "Insureds") filed a Complaint asserting claims against Defendants Twin City Fire Insurance Co. ("Twin City"), Zurich American Insurance Company ("Zurich"), Associated Electric & Gas Insurance Services

Limited("Associated Electric"), U.S. Specialty Insurance Company ("U.S. Specialty"), Illinois National Insurance Company ("Illinois National"), RSUI Indemnity Company ("RSUI"), Axis Insurance Company ("Axis"), Old Republic Insurance Company ("Old Republic"), Allied World National Assurance Company ("Allied World"), Navigators Insurance Company ("Navigators"), Arch Insurance Company ("Arch"), ACE American Insurance Company ("ACE"), XL Specialty Insurance Company (XL Specialty"), Alterra America Insurance Company ("Alterra"), Berkley Insurance Company ("Berkley"), Beazley Insurance Company, Inc. ("Beazley"), and Travelers Casualty and Surety Company of America ("Travelers") (collectively, "Insurance Defendants").[1] Through the Complaint, the Insureds seek: (i) declaratory relief concerning a duty to indemnify (Count II);[2] and (ii) damages for anticipatory breach of contract arising out of the Insurance Defendants purported repudiation under the directors' and officers' insurance policies issued by the Insurance Defendants to the Insureds (Count I).[3]

On January 31, 2020, Defendants Twin City, Allied World, and Navigators (collectively, the "Moving Insurers") filed a Motion to Dismiss under Superior Court Civil Rule 12(b)(2) (the "Motion").[4] The Insureds filed a Plaintiffs' Opposition to the Moving Insurers' Rule 12(b)(2) Motion to Dismiss (the "Opposition") on March 16, 2020.[5] The Moving Insurers, on April 14, 2020, filed a Reply in Support of Motion to Dismiss Pursuant to Civil Rule 12(b)(6) (the "Reply").[6] The Court held a hearing on the Motion, the Opposition and the Reply on June 24, 2020.[7] At the end of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Motion is **DENIED**.

---

[1] D.I. No. 1.
[2] Compl. ¶¶ 59-63.
[3] Id. ¶¶ 64-70.
[4] D.I. No. 71.
[5] D.I. No. 76.
[6] D.I. No. 80
[7] D.I. No. 98.

## II.    FACTS[8]

### A. GENERAL BACKGROUND

Energy Transfer is one of the largest midstream energy companies in the United States.[9] Energy Transfer and Regency GP LP are limited partnerships organized and existing under the laws of Delaware.[10] Regency GP LLC is a limited liability company organized and existing under the laws of the State of Delaware.[11] Regency GP LP is the general partner of Regency Energy Partners LP ("Regency").[12] Regency GP LLC is the general partner of Regency GP LP.[13]

Twin City is an Indiana corporation with its principal place of business in Connecticut.[14] Zurich is a New York corporation with its principal place of business in Illinois.[15] Aegis is a Bermuda corporation with its principal place of business in New Jersey.[16] U.S. Specialty is a Texas corporation with its principal place of business in Texas.[17] Illinois National is an Illinois corporation with its principal place of business in Illinois.[18] RSUI is a New Hampshire corporation with its principal place of business in Georgia.[19] AXIS is an Illinois corporation with its principal place of business in Georgia.[20] Old Republic is a Pennsylvania corporation with its principal place of business in Illinois.[21] Allied World is a New Hampshire corporation

---

[8] The facts are derived from the Complaint, unless stated otherwise.
[9] Compl. ¶ 5.
[10] *Id.* ¶¶ 5-6.
[11] *Id.* ¶ 7.
[12] *Id.* ¶ 2,
[13] *Id.*
[14] *Id.* ¶ 8.
[15] *Id.* ¶ 9.
[16] *Id.* ¶ 10.
[17] *Id.* ¶ 11.
[18] *Id.* ¶ 12.
[19] *Id.* ¶ 13.
[20] *Id.* ¶ 14.
[21] *Id.* ¶ 15.

with its principal place of business in New York.[22] Navigators is a New York corporation with its principal place of business in Connecticut.[23] Arch is a Missouri corporation with its principal place of business in Pennsylvania.[24] ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania.[25] XL Specialty is a Delaware corporation with its principal place of business in Connecticut.[26] Alterra is a Delaware corporation with its principal place of business in Virginia.[27] Berkley is a Delaware corporation with its principal place of business in Connecticut.[28] Travelers is a Connecticut corporation with its principal place of business in Connecticut.[29] Upon information and belief, the Insureds allege that all Insurance Defendants are authorized to sell or write insurance in Delaware and, at all material times, have conducted and continue to conduct substantial insurance business in Delaware.[30]

Energy Transfer has one of the largest portfolios of energy assets in the United States, with assets covering 38 states.[31] Energy Transfer's core operations include transportation and storage of natural gas, crude oil, and other energy products.[32] Energy Transfer owns and operates one of the largest pipeline systems in the United States, transmitting natural gas and other energy products across thousands of miles of pipeline connecting various production areas to markets across the United States and Canada.[33] At the time of the merger transaction, Regency was a master limited partnership, providing midstream services in high natural gas

---

[22] The Complaint alleged that Allied World is also a Delaware corporation, but the Insurance Defendants stated in the Motion that Allied World is not a Delaware corporation. *Compare* ¶ 16 *with* Motion at 3. For purposes of this Opinion, Allied World's place of incorporation is not decision determinative.
[23] *Id.* ¶ 17.
[24] *Id.* ¶ 18.
[25] *Id.* ¶ 19.
[26] *Id.* ¶ 20.
[27] *Id.* ¶ 21.
[28] *Id.* ¶ 22.
[29] *Id.* ¶ 24.
[30] *Id.* ¶¶ 8-24.
[31] *Id.* ¶ 28.
[32] *Id.*
[33] *Id.*

producing areas of the country.[34]  These services included the gathering and processing, compression, treatment, and transportation of natural gas in a number of states.[35]

## B. INSURANCE POLICIES

As part of its risk management programs, Energy Transfer annually purchased insurance, including director & officer ("D&O") insurance.[36]  Energy Transfer obtains insurance to protect Energy Transfer and its subsidiaries against third-party claims alleging wrongful conduct on the part of Energy Transfer and its subsidiaries.[37]  Energy Transfer's D&O insurance coverage tower in effect from February 28, 2014 to February 28, 2015 provides $170 million in Side C (entity) coverage in 17 layers of insurance, all in excess of a $3.5 million self-insured retention.[38]  Except as otherwise specified, all excess policies within the coverage tower "follow form" to Policy No. 00-DA-0228176-14 sold by the primary carrier, Twin City (the "Twin City Policy").[39]  As alleged in the Complaint, "[f]ollow form" means that, aside from attachment points and limits of liability, the excess policies incorporate and adopt the terms, conditions, definitions, and exclusions of the Twin City Policy. [40]

The Insurance Defendants have disputed their obligation to pay any damages in connection with the *Dieckman* Action (discussed below) under the following Policies:[41]

- The Twin City Policy, issued by Twin City, with a $10 million limit;[42]

- second-layer excess Policy No. DOC 5964643 06, issued by Zurich American with limits of $10 million in excess of $10 million;[43]

---

[34] *Id.* ¶ 29.
[35] *Id.*
[36] *Id.* ¶ 30.
[37] *Id.*
[38] *Id.* ¶ 31.
[39] *See id.* ¶ 32; Compl. Ex. A.
[40] *Id.* ¶ 32.
[41] *Id.* ¶ 33.
[42] *Id.* ¶ 33(a).
[43] *See* Compl. Ex. B.

- third-layer excess Policy No. DX1001114P, issued by Aegis with limits of $10 million in excess of $20 million;[44]

- fourth-layer excess Policy No. 14-MGU-14-A31330, issued by U.S. Specialty with limits of $10 million in excess of $30 million;[45]

- fifth-layer excess Policy No. 02-381-01-85, issued by Illinois National with limits of $10 million in excess of $40 million;[46]

- sixth-layer excess Policy No. HS656241, issued by RSUI with limits of $10 million in excess of $50 million;[47]

- seventh-layer excess Policy No. MCN730719/01/2014, issued by AXIS with limits of $10 million in excess of $60 million;[48]

- eighth-layer excess Policy No. CUG 36509, issued by Old Republic with limits of $10 million in excess of $70 million;[49]

- ninth-layer excess Policy No. 0305-2630, issued by Allied World with limits of $10 million in excess of $80 million;[50]

- tenth-layer excess Policy No. CH14DOL313510IV, issued by Navigators with limits of $10 million in excess of $90 million;[51]

- eleventh-layer excess Policy No. DOX 9300155-00, issued by Arch with limits of $10 million in excess of $100 million;[52]

- twelfth-layer excess Policy No. DOX G25592724 004, issued by ACE with limits of $10 million in excess of $110 million;[53]

- thirteenth-layer excess Policy No. ELU133333-14, issued by XL with limits of $10 million in excess of $120 million;[54]

- fourteenth-layer excess Policy No. MAXA6EL0001635, issued by Alterra with limits of $10 million in excess of $130 million;[55]

---

[44] *See* Compl. Ex. C.
[45] *See* Compl. Ex. D.
[46] *See* Compl. Ex. E.
[47] *See* Compl. Ex. F.
[48] *See* Compl. Ex. G.
[49] *See* Compl. Ex. H.
[50] *See* Compl. Ex. I.
[51] *See* Compl. Ex. J.
[52] *See* Compl. Ex. K.
[53] *See* Compl. Ex. L.
[54] *See* Compl. Ex. M.
[55] *See* Compl. Ex. N.

- fifteenth-layer primary Policy No. 18009514, issued by Berkley with limits of $10 million in excess of $140 million;[56]

- sixteenth-layer excess Policy No. V15QYP140701, issued by Beazley with limits of $10 million in excess of $150 million;[57] and

- seventeenth-layer excess Policy No. 106066639, issued by Travelers with limits of $10 million in excess of $160 million.[58]

The Twin City Policy contains an exclusion provision that the Insurance Defendants have raised in their dispute with the Insureds.[59] In particular, Section V(D)(3) of the Twin City Policy provides:

> Pursuant to Section VII., ALLOCATION OF DAMAGES, the Insurer shall not pay Damages:
> . . . .
> (3) under Insuring Agreement (B) or (C) that represent the amount by which the purchase price or consideration is effectively increased in connection with a Claim alleging that the price or consideration paid or proposed to be paid in a transaction involving all or substantially all of the ownership interests in or assets of an entity is inadequate, or plaintiff counsel fees and costs arising out of such Claim.[60]

## C. THE *DIECKMAN* ACTION

On or about June 10, 2015, a class of unitholders in Regency filed a class action lawsuit, *Dieckman v. Regency GP LP, et al.*, Case No: 11130-CB, D (the "*Dieckman* Action"), against, among others, Regency GP LP and Regency GP LLC, alleging breach of the Regency limited partnership agreement.[61] According to the Amended Complaint in the *Dieckman* Action,[62] Energy Transfer Partner's acquisition by merger of Regency violated the Regency limited partnership agreement because of undisclosed conflicts of interest in the merger approval

---

[56] *See* Compl. Ex. O.
[57] *See* Compl. Ex. P.
[58] *See* Compl. Ex. Q.
[59] *Id.* ¶ 45.
[60] *Id.* ¶ 46.
[61] *Id.* ¶ 47.
[62] *See* Compl. Ex. R.

process, inadequate negotiations, inadequate consideration of Regency's standalone prospects, and an improper dilution of Regency's profits after the acquisition. [63] The defendants in the *Dieckman* Action dispute the *Dieckman* plaintiff's claim for relief.[64] The underlying plaintiff alleged four causes of action, one of which survived a motion to dismiss: breach of contract by Regency GP LP and Regency GP LLC for breach of the Regency limited partnership agreement.[65] The *Dieckman* plaintiff is seeking approximately $2 billion in damages, interest, and fees.[66] Energy Transfer has defended the *Dieckman* Action for more than four years and trial took place in December of 2019.[67] Argument for post-trial briefing took place on May 6, 2020.[68] The Court of Chancery requested additional briefing on August 25, 2020.[69] The parties submitted the additional briefing on September 15, 2020.[70]

Energy Transfer timely notified all of its 2014-2015 coverage tower insurers of the *Dieckman* Action.[71] Twin City, the primary insurer, agreed to pay defense costs in excess of the retention amount, but has disputed its obligation to pay for damages that the Insureds may incur in connection with any settlement of or judgment in the *Dieckman* Action.[72] The other Insurance Defendants have adopted Twin City's coverage position and on that basis denied any obligation to pay damages that the Insureds may incur in connection with any settlement of or judgment in the *Dieckman* Action.[73]

---

[63] *Id.* ¶ 48.
[64] *Id.*
[65] *Id.*
[66] *Id.* ¶ 49.
[67] *Id.*
[68] *See Dieckman v. Regency GP LP, et al.*, Case No: 11130-CB, D.I. No. 317 ("*Dieckman* D.I. No.__").
[69] *Dieckman* D.I. No. 319.
[70] *Dieckman* D.I. Nos. 320 and 321.
[71] *Id.* ¶ 50.
[72] *Id.* ¶ 51.
[73] *Id.* ¶ 52.

The Insureds allege that the *Dieckman* Action constitutes a "Securities Claim" within the meaning of the Policies because the underlying claims are brought by unitholders of Regency, a defined Entity under the Twin City Policy.[74] The Insureds contend that the *Dieckman* Action plaintiff asserts a "Wrongful Act" in the form of alleged misstatements, omissions, and breaches of duties.[75] The Insureds then allege that any obligation to pay the underlying plaintiff or class as a result of a settlement or judgment would be "Damages," constituting a "Loss" under the Twin City Policy.[76] The Insureds, therefore, assert that the Insurance Defendants' coverage obligations are triggered under Insuring Agreement I(C).[77]

The Complaint provides that the Insurance Defendants assert that coverage is barred by Section V(D)(3) of the Twin City Policy.[78] The Insureds allege that the Insurance Defendants have improperly denied coverage.[79] The Insureds allege that the harm alleged by the *Dieckman* Action plaintiffs are not limited to a demand for an increase in consideration for the merger transaction.[80]

The Insurance Defendants have also objected to payment or coverage for such damages on the ground that it would constitute uninsurable disgorgement.[81] The Insureds allege that the Policy has an exclusion that would bar coverage for disgorgement, but only to the extent there is a final and nonappealable adjudication in the underlying action establishing that the Insureds wrongly gained personal profit.[82] Moreover, in the absence of such an adjudication, a claim for

---

[74] *Id.* ¶ 53.
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.* ¶ 54.
[79] *Id.* ¶ 55.
[80] *Id.* ¶ 57.
[81] *Id.* ¶ 58.
[82] *Id.*

9

disgorgement is covered.[83]  Accordingly, the Insureds claim that even if these damages did constitute disgorgement, the Insurance Defendants' defense would be meritless.[84]

## III.  PARTIES' CONTENTIONS

### A. THE MOVING INSURERS

The Moving Insurers contend that the Court lacks no personal jurisdiction over them. The Moving Insurers argue that Delaware's long-arm statute does not apply.  The Moving Insurers also contend that exercising personal jurisdiction over the Moving Insurers would violate due process because the Moving Insurers are neither subject to general jurisdiction nor specific jurisdiction in Delaware.

### B. THE INSUREDS

First, the Insureds contend that this Court has personal jurisdiction over the Moving Insurers.  The Insureds argue that the Insureds are insured persons located in Delaware and seek coverage for an insured risk in Delaware.  Second, the Insureds contend that the exercise of personal jurisdiction over the Moving Insurers comports with due process.  The Insureds claim that Allied World is subject to general jurisdiction and specific jurisdiction exists with respect to all the Moving Insurers.  The Insureds argue that personal jurisdiction is supported by fair play and substantial justice.

## IV.  STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably

---

[83] *Id.*
[84] *Id.*

conceivable set of circumstances.[85] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[86]

## V. DISCUSSION

Under Civil Rule 12(b)(2), "[p]laintiffs have the burden to demonstrate a prima facie case establishing personal jurisdiction."[87] Plaintiffs "must plead specific facts and cannot rely on mere conclusory assertions."[88] Delaware courts apply a two-part analysis to determine whether personal jurisdiction exists over nonresident defendants. "First, the Court must determine whether Delaware's long-arm statute is applicable. Second, the Court must determine whether subjecting a nonresident defendant to jurisdiction would violate due process."[89]

Delaware's long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant in a cause of action arising from the following specifically enumerated acts required of that defendant:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within

---

[85] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[86] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

[87] *AR Capital, LLC v. XL Specialty Ins. Co.*, 2019 WL 1932061, at *2 (Del. Super. Apr. 25, 2019).

[88] *Id.* (quoting *Mobile Diagnostic Grp. Holdings LLC v. Suer*, 972 A.2d 799, 802 (Del. Ch. 2009)).

[89] *Id.* (citing *Matthew v. Fläkt Woods Group SA*, 56 A.3d 1023, 1027 (Del. 2012)). *See also Sessoms v. Richmond*, 2017 WL 6343548, at *2 (Del. Super. Dec. 8, 2017); *see also Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 1991 WL 190313, at *1 (Del. Super. Sept. 10, 1991).

the State at the time the contract is made, unless the parties otherwise provide in writing.[90]

To establish specific jurisdiction, the Insurers must show that "(1) the nonresident transacted some sort of business in the state; and (2) the claim being asserted arose out of that specific transaction."[91] This essentially means that the Insurers must establish a nexus between their claims and the nonresident's forum-related conduct.[92]

Using these accepted principles, the Court finds that the Court has personal jurisdiction over the Moving Insurers. The Court notes that there have been a number of recent decisions concerning general jurisdiction that make it "tempting" to argue for lack of personal jurisdiction. However, the facts in this civil litigation support the conclusion that the Court can exercise personal jurisdiction over the Moving Insurers.

First, 10 *Del. C.* § 3104(c)(6) applies. The Moving Insurers issued insurance contracts to the Insureds. The Insureds are found in Delaware, *i.e.*, the Insureds are organized and existing under the laws of the State of Delaware. The Policies at issue are D&O insurance policies insuring the actions of officers and directors of Delaware corporate entities. As such, the Moving Insurers are defendants who issued "contracts to insure" a person (the Insureds and their officers and directors) located and/or to be performed in Delaware at the time the Policies were issued.

Next, the Court must determine whether the exercise of jurisdiction would offend due process. The Court finds that the exercise of personal jurisdiction over the Moving Insurers would not offend due process. In making this determination, the Court has relied upon the well-

---

[90] 10 *Del. C.* § 3104(c).
[91] *Maloney-Refaie v. Bridge at School, Inc.*, 958 A.2d 881, 878 (Del. Ch. 2008); *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *3 (Del. Ch. Aug. 4, 2017).
[92] *See Mobile Diagnostic*, 972 A.2d at 804.

reasoned decision in *Hoechst Celanese Corp. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*. *Hoechst* is a case where an insurance carrier entered into insurance contracts with a Delaware corporation that was headquartered in New York. The Court held that a non-Delaware insurance company that insured a corporation incorporated under the laws of Delaware "must have foreseen the possibility that it could be haled into court in this forum." In arriving at this conclusion, the *Hoechst* court relied upon *International Shoe Co. v. Washington*,[93] *Shaffer v. Heitner*,[94] *World-Wide Volkswagen Corp.*[95] and *Kulko v. Superior Court of California*.[96] These cases remain guiding precedent concerning personal jurisdiction.

Delaware may exercise jurisdiction over the Moving Insurers only if the Moving Insurers have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[97] The Court must focus on the relationship between the Moving Insurers, Delaware and the litigation to determine whether a particular exercise of state court jurisdiction is consistent with due process.[98] The Court notes that a single contact between the Moving Insurers and Delaware may be sufficient, especially when there is a nexus between the contact and the cause of action. Here, the Moving Insurers entered into D&O insurance contracts with Delaware corporations that provided coverage for those corporations' officers and directors. In insuring Delaware entities, formed under the laws of this State, the Moving Insurers must have foreseen the possibility that they could have been haled into Delaware.[99] The Court cannot point to any statistical analysis, but rarely are officers and directors of a Delaware entity sued for a breach of fiduciary duty outside of Delaware. This

---

[93] 326 U.S. 310 (1945).
[94] 433 U.S. 186 (1977).
[95] 444 U.S. 286 (1980).
[96] 436 U.S. 84 (1978).
[97] *International Shoe Co.*, 326 U.S. at 316.
[98] *Shaffer*, 433 U.S. at 204.
[99] *See World-Wide Volkswagen Corp.*, 444 U.S. at 292; see also *Kulko v. Superior Court of California*, 436 U.S. 84,

13

means the duty to defend and indemnify would likely be in Delaware, and any coverage dispute litigation would be in Delaware. Also relevant to this inquiry as well is Delaware's interest in adjudication of the dispute.[100] The *Dieckman* Action is pending in the Court of Chancery. The Complaint asserts causes of action that relate to the duties of the Insurance Defendants, including the Moving Insurers, to indemnify for a "Loss" incurred in that litigation.

Like in *Hoechst*, the Court sees no reason why the Moving Insurers should not be required to remain in this civil proceeding. This is a litigation initiated by Delaware entities with which the Moving Insurers conducted business and insured for potential losses relating to the Delaware officer and directors of the Insureds.

### VI.     CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

Dated: September 25, 2020
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress

---

[100] *See World-Wide Volkswagen*, 444 U.S. at 292.

14